30 U.S. 718 (____)
5 Pet. 718
ELISHA R. POTTER, APPELLANT
vs.
HANNAH GARDNER AND OTHERS.
Supreme Court of United States.

The cause was argued by Mr Pearce, for the appellants; and by Mr Bridgham and Mr Webster, for the appellees.
Mr Justice M'LEAN delivered the opinion of the Court.
This is a suit in chancery, brought by Potter, the appellant, from a decree of the circuit court in Rhode Island.
The controversy arises out of the following decree of this court, between the same parties, in 1827; and reported in 12 Wheat. 498.
"On consideration whereof, this court is of opinion, that there is error in so much of the decree of the circuit court, as subjects Elisha R. Potter to the payment of a larger sum of money than now remains in his hands, of the original purchase money, added to the sum he has applied to the payment of the debts of Ezekiel W. Gardner, after deducting therefrom the amount given for the estates purchased from Isabel Gardner; and in so much of the said decree as directs the said Elisha R. Potter to pay the sum he has applied to the debts of Ezekiel W. Gardner, and for which he, the said Ezekiel, is liable in the first instance, before he, the said Ezekiel, shall have failed to pay the same. It is therefore the opinion of the court, that so much of the said decree, contrary to this opinion, be reversed and annulled; and that the same be in all other respects affirmed: and the cause is remanded to the said circuit court, with directions to reform the said decree, according to this opinion; and to do all other things therein, as justice and equity may require. In taking an account between the *719 parties, which may be necessary to give effect to this decree, interest is to be computed according to law and usage."
The facts on which this decree was founded are substantially these: on the 20th of April 1819, Potter purchased from Ezekiel W. Gardner, a tract of land, called the Ferry Farm, for which he agreed to pay fifteen thousand dollars. Two-thirds of this tract of land was charged, by the last will of Peleg Gardner, with the payment of his debts. Ezekiel claimed under the will.
By an agreement made at the time of the purchase, it seems, that Gardner was to remain in possession of the farm until the 25th March 1822, at a rent of nine hundred dollars per annum: the consideration money to be paid when the lease expired; and if any part of it should be paid before that period, interest was to be allowed on the sum thus advanced. The rent stipulated to be paid was in lieu of interest on the purchase money, and to the same amount. It was the intention of the parties, that the one account should balance the other. The original bill was filed against Potter, in behalf of the creditors of Peleg Gardner, deceased, to secure an application of the purchase money to the payment of their debts. As a part of the money had been paid by Potter, in discharge of debts due by Ezekiel W. Gardner; the court held, that this was a misapplication of so much of the fund; and decreed that Potter should pay the same amount to the creditors of Peleg Gardner, if it could not be recovered from Ezekiel; and also, the balance that remained due of the two-thirds of the purchase money. The cause being remanded to the circuit court, the decree was referred to a master who made the following report. "That the amount of debts due from the estate of the said Peleg Gardner, deceased, with the expenses which have accrued on several of the claims, and the compensation of the commissioners on that estate, including the interest on the claims to the date of the report, is eleven thousand eight hundred and eighty-seven dollars and ninety-two cents. That in ascertaining the amount of the several claims of the creditors, he computed the interest on those which had not been reduced to judgment, from the time the claims began to carry interest, up to the date of the report; and on those which were reduced to judgments, from the judgments to the same period.
*720 And he further reported, "that the said Elisha R. Potter had paid on account of the purchase of that part of the Ferry Farm devised to the said Ezekiel W. Gardner, in cash, the sum of four thousand three hundred and eighteen dollars and sixty-four cents; which when deducted from the principal sum, liable to the payment of the debts of the said Peleg, left the sum of five thousand six hundred and eighty-one dollars and thirty-six cents.
"And that the said Elisha R. Potter is liable, according to the principles of the decree and opinion of the supreme court, directly and immediately, to pay the sum of three thousand nine hundred and twenty-nine dollars and sixty-two cents; being so much of the purchase money as remains in his hands, and being part of the before named sum of five thousand six hundred and eighty-one dollars and thirty-six cents; and the residue of said sum, being one thousand seven hundred and fifty-one dollars and seventy-four cents, the said Ezekiel Gardner is, according to the said decree, in like manner liable in the first instance to pay; and in case of failure on his part to pay the same, the said Potter is required to pay the same, &c."
"He calculated the simple interest on the before named sum of three thousand nine hundred and twenty-nine dollars and sixty-two cents; from the 16th of October 1820, the day when the summons, in this cause, was served on said Potter, to the date of the report; amounting to two thousand and forty-two dollars and eighty cents: which, with the principal sum remaining in his hands, makes the sum of five thousand nine hundred and seventy-two dollars and forty-two cents, which sum the said Potter is liable to pay directly. And the simple interest on the before named sum of one thousand seven hundred and fifty-one dollars and seventy-four cents, which the said Ezekiel W. Gardner is liable in the first instance to pay, from the 16th October 1820 to the date of the report, is nine hundred and ten dollars and forty-nine cents; which, when added to the principal, amounts to the sum of two thousand six hundred and sixty-two dollars and twenty-three cents; and for the payment of this, the said Potter is liable, if it shall not be paid by the said Gardner."
Exceptions were taken to this report, but they were overruled by the circuit court, and a pro forma decree entered *721 against Potter, for the payment of five thousand nine hundred and seventy-two dollars and forty-two cents, with interest on the same from the time the report was made; and also for the payment of two thousand six hundred and sixty-two dollars and twenty-three cents, with interest from the same time; provided, that sum should not be paid by Ezekiel W. Gardner, or collected from him by execution. From this decree, Potter appealed, and relies for its reversal on the following exceptions.
1. That no allowance was made to him of said two-thirds of the rent of the Ferry estate; which he alleges was received by said Ezekiel, towards payment of said estate.
2. That the claim of said Potter for nine hundred dollars, which he paid to said Ezekiel on the 21st of March 1821, was disallowed.
3. That interest is charged on said sum of three thousand nine hundred and twenty-nine dollars and sixty-two cents; when no interest ought to be allowed thereon.
4. That the sum of five thousand nine hundred and seventy-two dollars and twenty-two cents, is reported to be due immediately and directly from said Potter; whereas, only three thousand nine hundred and twenty-nine dollars and sixty-two cents; being the amount of the security payable in mortgages; is due, either directly or ultimately.
5. That by said report, he is made ultimately liable, on failure of said Ezekiel, to pay the sum of eight thousand six hundred and thirty-four dollars and sixty-five cents; whereas he ought not in any event, to be liable for any more than said sum of three thousand nine hundred and twenty-nine dollars and sixty-two cents.
The rights and obligations of the parties being fixed by the decree which was formerly made by this court; it now only remains to carry into effect the principles of that decree.
As the purchase money was not to be paid by Potter until the 25th of March 1822, no interest should be charged against him prior to that time. But he objects to the payment of any interest, on the ground that it was not in his power to pay the money and discharge his obligation, before the final decree in the case be made.
The suit was prosecuted by the complainants, for the benefit *722 of the creditors of Peleg Gardner, deceased; and although a question, as to their right to prosecute the suit was raised by the defendant; yet it was in his power to discharge himself from the payment of interest, by bringing into court whatever balance he conceived to be due, and paying it over under the order of the court. On the balance thus paid over, interest could not have been charged. As this was not done, it appears that the defendant below did not do all that was in his power to exempt himself from the charge of interest.
By the decree of this court he is made eventually responsible for the sum stated in the master's report, as having been paid by him to the creditors of Ezekiel W. Gardner. For this sum he is liable to the creditors of Peleg Gardner, in the same manner as though it had never been paid, if it cannot be recovered from Ezekiel. The interest on this sum, whether paid by Ezekiel W. Gardner, or Potter, should only be charged from the 25th March 1822.
It appears that possession of the farm was retained two years by Ezekiel W. Gardner under the lease; and then it was surrendered to the appellant. He paid to Gardner, as he alleges, for the rent of the farm, or the interest on the purchase money, for the third year, the sum of nine hundred dollars; and for two-thirds of this sum, he claims a credit.
As interest is not charged against the appellant on the purchase money, until the 25th March 1822, which was after the expiration of the lease; this sum, whether paid as interest or for rent, cannot be credited as so much paid on the principal, or in discharge of interest which subsequently accrued. To apply the credit as contended for, would be contrary to the intention of the parties at the time the payment was made; and against the justice of the case. The appellant having possession of the farm the third year of the lease, was bound in justice to pay the rent; which Gardner had agreed should be considered in his hands, as an offset against the interest on the purchase money.
During the two years which Gardner occupied the farm, the rent was balanced by the interest; and of course, no credit can be claimed by the appellant, on that account. Under this construction of the former decree of this court, the appellant is bound to pay the sum of three thousand nine hundred *723 and twenty-nine dollars and sixty-two cents, with interest from the 25th March 1822; and he is also bound to pay, eventually the sum of one thousand seven hundred and fifty-one dollars and seventy-four cents, with interest from the same time: if that amount cannot be collected from Ezekiel W. Gardner. And, as the last decree of the circuit court is contrary to this opinion, it is reversed and annulled.
This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Rhode Island, and was argued by counsel; on consideration whereof this court is of opinion, that there is error in so much of the decree of the said circuit court as subjects Elisha R. Potter to the payment of interest from the 16th of October 1820, and that said decree be reversed and annulled: and this cause is remanded to the said circuit court, with directions to enter a decree that the said Elisha R. Potter pay into the registry of the circuit court, within thirty days from the next term of that court, the sum of three thousand nine hundred and twenty-nine dollars and sixty-two cents, with interest from the 25th of March 1822  to be paid over to the complainants, or to the creditors of Peleg Gardner, under the directions of that court; and unless payment be made within thirty days, that the complainants have execution thereof: and that the said court also enter a decree, that Ezekiel W. Gardner do pay into the registry of the court, subject to its order, within thirty days as aforesaid, the sum of one thousand seven hundred and fifty-one dollars and seventy-four cents, with interest from the 25th of March 1822, for which he is in the first instance liable, and the said Potter ultimately; and in default thereof that execution issue against the said Ezekiel: and if such execution shall be returned unsatisfied, then the amount shall be immediately paid into the registry aforesaid, by the said Potter; and on his failing to pay it, the circuit court are directed to award an execution against him for the same.

*724 RULE, No. 37.
1. In all cases the clerk shall take of the plaintiff a bond, with competent security, to respond the costs, in the penalty of two hundred dollars; or a deposit of that amount, to be placed in bank subject to his draft.
2. In all cases the clerk shall have fifteen copies of the records printed for the court: provided the government will admit the item in the expenses of the court.
3. In all cases the clerk shall deliver a copy of the printed record to each party; and in cases of dismission (except for want of jurisdiction), or affirmance; one copy of the record shall be taxed against the plaintiff; which charge includes the charge for the copy furnished him. In cases of reversal, and dismission for want of jurisdiction, each party shall be charged with one half the legal fees for a copy.
Mr Justice BALDWIN.
I concurred with the court in the first and second items of this rule, but I dissent on the third.
By the common law, costs were not recoverable in any action, real, personal and mixed. They were first given by the statute of Gloucester, 6 Edw. I. ch. 1, and subsequently by various statutes; but courts do not allow them when not given by some statute. 3 Com. Dig. 205: Costs, A. 1, 210; A. 2. 6 Vin. 321. 2 Bac. Abr. 33, 10, 116, a. 1 Str. 615, 617. By the statute of Henry III. ch. 10, costs were given on an affirmance of a judgment on a writ of error brought by defendant. Where the plaintiff in the court below brought the writ of error, he paid no costs on affirmance, until the statute 8 and 9 William 3, ch. 11; which gave them to the defendant on affirmance, discontinuance, or non-suit. None were given where the writ of error was quashed, for variance or other defect, till the statute 4 and 5 Anne, ch. 16. 3 Com. Dig. 230, B. Costs in error and cases cited. There is no statute giving costs in cases of reversal, and therefore they are never allowed. Str. 615, 617. 3 Com. Dig. 232. 6 Vin. 339. In the case in Strange, the court say, *725 it would be wrong to make a party pay costs for the error of the court below. The reason is obvious; a court of error can only give such judgment as the court below ought to have given. If the judgment is affirmed, it relates only to the one rendered in the inferior court; and can include nothing more than was recovered there: if it is reversed, and the cause goes back for a new trial; the effect is merely to annul the erroneous judgment and leave the case open. If the case goes up on a demurrer, case stated, or special verdict; and the superior court, on a reversal, proceed to render judgment; it is only such an one as ought to have been rendered by the inferior court: which could on no principle be authorized to tax costs, which were to accrue only in another court, which was to revise the first judgment; but are necessarily confined to costs incurred in the original action. 12 East, 668, 671. 1 L. Raym. 10. Salk. 403. Carth. 180. 2 Tidd's Pr. 1243, 1244.
Costs are considered as a penalty; and though the courts in England may think it agreeable to mutual justice to allow them, they never do it unless in cases provided for by law. It is with them a settled and established rule, that all acts which give costs are, and ought to be, construed strictly, and according to the letter. 3 Burr. 1286, 1287. 4 Binney, 13, 14. 9 Mass. 372, S.P.
In cases of reversal, the English rule has been adopted in the state courts. 5 Binney, 204. 1 Mass.85. 4 Mass. 436. 1 Serg. and Rawle, 436 7 T.R. 468.
The judiciary act gives costs on affirmance. 1 Story's Laws U.S. 61. But no law gives them on reversal. In 4 Cranch, 467; 2 Peters's Cond. Rep. 19; this court decide that they are not allowed; and affirms the same rule in 6 Cranch, 86; 2 Peter's Cond. Rep. 307, 183.
Where a writ of error is dismissed for want of jurisdiction, costs are not allowed (2 Wheat. 368. 9 Wheat. 650), unless the plaintiff in error was the plaintiff below. 3 Cranch, 514; 1 Peters's Cond. Rep. 612.
In 3 Dallas, 338; 1 Peters's Cond. Rep. 153, the court refused to allow the cost of a printed statement of the case for the use of the judges; observing that however convenient it might be, there was no rule authorizing the charge.
*726 In 7 Cranch, 276; 2 Cond. Rep. 491; the court stated their opinion to be, that each party was liable to the clerk for his fees for services performed for each party; and it is immaterial to the clerk which party recovers judgment. Duvall, justice, stated this to be the rule in Maryland; that if either party requires a copy of the record, he must pay for it as for any other service, but it is not a part of the costs which are to be taxed against the other party as costs of suit.
I can find but one case in which this court have ever allowed costs on a reversal; which is Clarke vs. Harwood, 3 Dallas, 342; 1 Cond. Rep. 157, where a judgment of the court of appeals of Maryland, reversing a judgment of the general court was reversed, the judgment of the general court affirmed, and the mandate for execution issued to that court, which expressly included the costs in this court. This was done without argument, or reasons assigned; but it has never been followed up in any reported case: on the contrary, all the subsequent cases adopt the rule of the English and state courts, of allowing no costs on reversal. It may fairly be considered as an exception to the general rule; as, though the judgment of the court of appeals was reversed, that of the general court was affirmed, and costs recoverable under a liberal construction of the twenty-third section of the judiciary act; at all events a special order in this case is no precedent for a standing rule of court.
As to costs and expenses, in proceedings in courts of admiralty; "they are not matters positively limited by law, but are allowed in the exercise of a sound discretion of the court." And no appeal lies from a mere decree respecting costs and expenses. 3 Peters's Cond. Rep. 319. But neither of these rules apply to writs of error, or appeals, in any other cases. The rules of courts of admiralty in England and here are peculiar as to costs and expenses; having no analogy to costs in courts of common law; and, not being governed by the same rules.
The fees of the clerk of the supreme court are declared by the act of May 1792, to "be double the fees of the clerk of the supreme court of the state where the supreme court of the United States shall be holden." 1 Story's Laws U.S. 258, sect. *727 3. The only discretion given to the court as to the clerk's fees, is in the same section which provides, that where any clerk performs any kind of service which is not performed in the courts of the state, and for which the laws of the state make no allowance; the court may allow a reasonable compensation. Story's Laws U.S. 259. This law can have no application to this rule, for the laws of the states all allow fees for copies of records, and the clerks of their courts of appellate jurisdiction do perform the same kind of services provided for by this rule.
Besides, this rule does not profess to allow a reasonable compensation for services not embraced in state laws; but directs and orders which party shall, in the specified cases, pay for the copy of the record. It does not say what those fees shall be; that having been ascertained by the rules in the court of the state where this court is holden.
The clerk is not ordered to make out a copy of the record, but the costs of a copy shall be taxed against the plaintiff. His right is as complete under the rule, whether the copy is made at the request of defendant, or not made at all, as if actually done at the request of party charged with it; or whether the cause is argued or dismissed, for a cause unconnected with the merits, so as to dispense altogether with the necessity of a copy for either party or the court.
This is not the exercise of a discretion over cases not provided for by law, to be used as exigencies may occur; it is a general summary order or decree, extending to all cases depending. The cost of a copy is not a compensation for services rendered in the nature of fees; but in the nature of a penalty imposed on suitors, which forms a legal item of taxed costs. If the court had allowed what was, in their opinion, a reasonable compensation for superintending the printing of the records, to be ascertained after the service had been performed; there might have been some justice in enacting it, as well as some colour of authority for it, under the law of 1792. Even then, the court would have no power to order that compensation to be paid by a party not liable to costs; or in a case where none were recoverable,  as on a reversal or dismission for want of jurisdiction.
The imposition of costs on a party litigant is, in England, in all the states, and by congress, considered as the subject of *728 legislation, as much regulated by laws, and as binding on courts as rules of decision on questions of costs, as of damages or property. There is no more authority to change the rules of law on this subject than any other. The federal courts may make rules of practice: process and other proceedings may be in the forms they prescribe (1 Story's Laws U.S. 60, 66, 67, 257, 268); but fees are to be regulated by those in the state courts, with only the one exception, where services are performed by clerks, for which state laws made no allowance, or where specially regulated by congress.
I know of no principle which empowers courts to regulate questions of costs by a standing rule, more than questions of evidence, under a law giving them power to make rules respecting practice, process, or proceedings. Costs are in their nature penal: to impose them without a law for their allowance, in cases where none are taxable, for want of jurisdiction in the court over the parties, or the subject matter in controversy; or on parties not liable, is the infliction of a penalty, without the scope of the judicial power, under any principle of common, statute, state law, or act of congress. It is, in its effect, the imposition of a fine, for the benefit of the clerk, on one party, for the right of prosecuting; and on the other for defending his interest on a writ of error in this court.
As the rule does not profess to be founded on any pre-existing law, written or unwritten; on any usage or practice established by the decisions of this court; but prescribes and enacts a new one, in direct opposition to all previous law and usage: I view it as a direct act of judicial legislation over a subject not embraced in the judicial power, unless expressly conferred by congress.