## CLAFLIN & KIMBALL v. MATHER ELECTRIC CO.

### (Circuit Court of Appeals, Second Circuit.   December 7, 1899.)

### No. 73.

1. ACTION—SPLITTING CAUSE OF ACTION BY AGREEMENT.

As the rule prohibiting the severance of a cause of action is for the benefit of the defendant, he may waive the rule, and consent to a division; and where, upon a consideration moving from him, the plaintiff enters into an agreement for forbearance as to a portion of his claim, defendant cannot plead a judgment on the remainder of the claim as a bar to a second action, brought after the time of forbearance agreed upon has expired.

2. SAME—CONDITIONAL SETTLEMENT OF PART OF CAUSE OF ACTION.

Plaintiff, which held claims against defendant, a corporation, growing out of a contract, accepted stock of defendant in satisfaction of a specified part of the claims upon certain conditions, to be performed by a time stated. The conditions not having been performed within such time, plaintiff tendered back the stock received. It had previously brought a suit on its unadjusted claims, which was then pending. *Held*, that the judgment in such suit could not be pleaded by defendant in bar of a subsequent suit upon the portion of the claims covered by the adjustment.

3. SAME.

Plaintiff, not having the right to sue on such portion of its claim at the time it commenced its first suit, could not be required to introduce its cause of action thereon into such suit by amendment after the same accrued.

In Error to the Circuit Court of the United States for the District of Connecticut.

F. L. Hungerford, for plaintiff in error.

C. E. Perkins, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.   In March, 1892, the parties entered into a written contract, by which the plaintiff became the exclusive agent for the sale of electric appliances and machinery which the defendant was then producing.   Article 13 of the contract provided that the defendant should protect the plaintiff "from loss arising from mechanical or electrical defects in goods of their manufacture."   On February 2, 1894—

"The defendant was indebted to the plaintiff for causes growing out of this contract, and was also indebted to certain banks in the city of Hartford, and, in order to enable it to continue in business, it became necessary for it to make some compromise of said claims, and to that end it was on said day agreed between the plaintiff and defendant that the defendant, by way of compromise, should pay to the plaintiff, and the plaintiff should accept in payment of these claims, the sum of fifteen thousand dollars ($15,000) in the preferred stock of the defendant company at its par value, and pursuant to said agreement the defendant delivered to the plaintiff, and the plaintiff accepted, a certificate for said one hundred and fifty shares of said preferred stock, but it was made by agreement an express condition of said compromise that the said banks in Hartford to which the defendant was indebted should take the entire amount of their claims in the preferred stock of said company on or before January 1, 1895, and that there should be not less than fifteen thousand dollars ($15,000) in cash put into the business of the company for the purpose of continuing it in business, and the plaintiff's right of action upon the claims in this suit was suspended until after the 1st day of January, 1895." "The banks in Hartford did not take any amount of their claims in the preferred stock of the defend-

ant, either before or after January 1, 1895, the sum of fifteen thousand dollars ($15,000) in cash was not put into the business of said company for the purpose of continuing it, and the defendant company did not continue in business." "On the 17th day of January, 1895, the plaintiff tendered back to the defendant company the one hundred and fifty shares of preferred stock, and notified it that the conditions upon which the stock had been received had not been fulfilled, and that the agreement was, therefore, null and void."

On August 9, 1894, the plaintiff brought a suit in the circuit court of the United States for the district of Connecticut against the defendant to recover, under the provisions of article 13, for losses which had arisen to it as selling agent, and for moneys due as commissions and otherwise. No cause of action in this suit was included in the agreement of February, 1894. More particular statements in the complaint and bill of particulars were given of these claims. The cause was tried by the court, a jury having been waived, and judgment was rendered in April, 1897, for the defendant to recover, under a claim of set-off, one dollar and costs against the plaintiff. On January 17, 1895, after the agreement of compromise came to an end, the plaintiff brought a second suit in the same court against the defendant to recover for the amount due upon the claims which were attempted to be compromised, which consisted of losses for which indemnity had been promised by clause 13, and of moneys due to the plaintiff as a selling agent, which were sought to be recovered under the common counts. The defendant pleaded in bar the judgment in the first suit, upon the ground that the causes of action set forth in both suits were breaches of the same clause, and accrued, if at all, before the bringing of the first suit, and that the items in the bill of particulars in each suit were under the same contract, and matured before the date of the first suit, and that all the causes of action in the second suit might have been included in the issues upon the trial of the first suit. The reply to this answer set up the matter contained in the agreement of compromise of February, 1894, to which the defendant demurred. The demurrer was sustained by the court, and this writ of error was brought to review the judgment for the defendant. (C. C.) 87 Fed. 795.

It is conceded that what is commonly known as "splitting a cause of action" is denounced by courts, or, as it is stated in Secor v. Sturgis, 16 N. Y. 548:

"The rule is fully established that an entire claim cannot be divided, and made the subject of several suits, and, if several suits be brought for different parts of such a claim, the pendency of the first may be pleaded in abatement of the others, and a judgment in either will be available as a bar in the other suits."

It is said in Welles v. Rhodes, 59 Conn. 498, 22 Atl. 286;

"It is now an established principle in our law of civil procedure that two suits shall not be brought for the determination of matters in controversy between the same parties, whether relating to legal or equitable rights or to both, when such determination can be had as effectually and properly in one suit."

The courts of Connecticut have been rigorous in the enforcement of this principle. Pinney v. Barnes, 17 Conn. 420; Town of Marlborough v. Sisson, 31 Conn. 332; Burritt v. Belfy, 47 Conn. 323; Wildman v. Wildman, 70 Conn. 710, 41 Atl. 1.

The plaintiff, in answer to this proposition, says that the sets of claims which are sued upon in the second suit were, by the agreement of February, 1894, divided and severed from the sets of claims which were sued upon in the first suit, and that its right of action upon the claims included in that agreement was postponed and suspended, so that at the commencement of the first suit the plaintiff could not maintain an action for the causes of action described in the second suit. The defendant asserts that the agreement of February, 1894, was simply an executory agreement to compromise a portion of the debts due to the plaintiff, which never became executed, and that at the date of the first suit these claims, having matured and being admitted, could have been included in the complaint. The effect of the agreement was more than that of a mere executory agreement to compromise in case others did the same, and in case fresh capital should be added. The plaintiff received a certificate for 150 shares of preferred stock in full of a specified class of debts, if other events took place on or before January 1, 1895, and had thereby given forbearance for the payment in cash of these debts, and had, upon a consideration moving from the defendant, extended the time of payment in money till that date. If it had sued upon those debts before they had matured, or before a rescission and abandonment of the agreement, the defense of an agreement, for value received, of forbearance until January 1, 1895, could have been interposed. A recovery by suit brought before that date was prevented by what is called in the opinion of the circuit court "a temporary bar"; that is, the suit would have been prematurely brought. The plaintiff could not, after having received and accepted the certificate for preferred stock, and still insisting upon its right to the fruits of its agreement, sue upon the debts, until the time when by the terms of the agreement it was to become of no effect. This forbearance of payment of a part of its debts was at the instance of the defendant, who thereby waived the benefit of the rule of law that the plaintiff must, at the date of his first suit, include his existing and matured claims arising from the nonperformance of a single contract; in other words, as the rule prohibiting the severance of the causes of action is for the benefit of the defendant, he may waive the rule, and consent to a division. This principle is one of natural equity, and is forcibly asserted in Mills v. Garrison, 42 N. Y. 40; Burritt v. Belfy, 47 Conn. 323; O'Beirne v. Lloyd, 43 N. Y. 248; Stickel v. Steel, 41 Mich. 350, 1 N. W. 1046. It may be said that, if the defendant had waived his right to insist that plaintiff's debts or claims should be embraced in one suit, it was a temporary waiver, and that, the compromise agreement having become null on January 1, 1895, the claims which were not settled should have been introduced into the first suit by amendment. It is evident that, if introduced at all, they must have been introduced by leave of court, for the plaintiff had so thoroughly stated, by bill of particulars and by new counts, the extent of the demand for which it was suing, that additional claims must have been presented by an amendment of the complaint or of the bill of particulars. An amendment by new counts might have been allowed, but the allowance would have been, unless consented to, technically improper, because

the claims sought to be introduced by amendment could not have been sued upon at the date of the first suit, and new counts in an action at law should not be inserted by amendment "unless they might have been originally inserted therein." Gen. St. Conn. § 1023. It is, however, said that a statute of Connecticut (Gen. St. § 1050) permits the plaintiff in any action, founded in contract, for the recovery of damages, to offer evidence "of any damages that may have accrued from the same cause of action subsequent to the bringing of this suit, provided that he shall have given notice to the defendant of the damages so designed to be proved." This statute was evidently intended to refer to a breach of contract, the damages from which continue after the bringing of the suit. It is, however, probable that, under the liberal spirit which prevails in regard to amendments, and by a broad construction of this statute, the bill of particulars made a part of paragraph 8 of the first complaint would have been amended if such an amendment had been asked for. The question then arises, was it incumbent upon the plaintiff to ask and attempt to obtain this amendment? Inasmuch as the claims had been severed at the instance of the defendant, and the plaintiff was prevented from suing upon the claims in the second suit when the first suit was brought, we see no adequate reason for saying that it was the duty of the plaintiff to undertake to assemble the severed claims after January, 1895, in the then pending suit. The principle which prohibits severance of claims was established for the benefit of a defendant, and if he has waived, upon a consideration moving from himself and for his benefit, conformity to the rule, he ought not to insist upon the plaintiff's obedience to it. The judgment of the circuit court is reversed, with costs.