### SOUTHERN PAC. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,578.

1. APPEAL AND ERROR (§ 1035*)—REVIEW—HARMLESS ERROR—WAIVER.

Under the rule that an appellate court will not reverse the decision of a trial court for error, unless the error has prejudiced the party who complains of it or has deprived him of a substantial right, the action of a federal court in overruling an objection to its jurisdiction in equity,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

based on the ground of an adequate remedy at law, although erroneous, is not reversible error, where there was no issue which could have been submitted to a jury, but the case was heard and determined on the bill, answer, and admissions of the defendant, involving solely questions of law, and defendant was not therefore deprived of his constitutional right to a jury trial, which was in effect waived by his admission of the facts on which complainant's right of recovery depended.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4031; Dec. Dig. § 1035.*]

**2. JUDGMENT (§ 590*)—JUDGMENT AS BAR—MATTERS CONCLUDED.**

The decree, in a suit by the United States against a railroad company to determine its right to certain lands under a grant, in which the only question determined was that the lands did not pass to defendant under the grant, but were erroneously patented to it, is not a bar to a second suit brought under Act March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595), and Act March 2, 1896, c. 39, 29 Stat. 42 (U. S. Comp. St. 1901, p. 1603), to recover from the company the price of the lands on an allegation that they had been sold by defendant to bona fide purchasers whose title had been confirmed under the provisions of such acts.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1102–1106; Dec. Dig. § 590.*]

**3. ACTION (§ 53*)—SPLITTING CAUSES OF ACTION—WAIVER OF OBJECTION.**

A defendant may either expressly or impliedly consent to the institution of separate actions or a single demand, and such consent will be presumed unless he pleads the former action in bar or otherwise objects in the trial court.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 53.*]

**4. INTEREST (§ 46*) — MONEY RECEIVED BY RAILROAD COMPANY FOR LANDS ERRONEOUSLY PATENTED.**

On a recovery by the United States against a railroad company under Act March 2, 1896, c. 39, 29 Stat. 42 (U. S. Comp. St. 1901, p. 1603), for land erroneously patented to defendant under a grant and sold by it to bona fide purchasers, the allowance of interest from the date of the act was not erroneous, where it was undisputed that defendant received the price of the land prior to that time, and where also a suit had been previously instituted by the United States in part to recover such money, which was a sufficient demand to start the running of interest, although the right to recover the money was not determined therein.

[Ed. Note.—For other cases, see Interest, Dec. Dig. § 46.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by the United States against the Southern Pacific Railway Company. Decree for complainant (157 Fed. 96), and defendant appeals. Affirmed.

The appellee in its bill alleged that by the act of Congress approved July 27, 1866 (Act July 27, 1866, c. 278, 14 Stat. 292), the Atlantic & Pacific Railroad Company was incorporated and granted lands in California, and that the grant was declared forfeited by act of July 6, 1886 (chapter 637, 24 Stat. 123), for failure to construct the road in aid of which it was made; that section 18 of said act of July 27, 1866, authorized the Southern Pacific Railroad Company to construct a railroad from Needles via Mojave to San Francisco, and made that company a grant of lands to aid in the construction thereof; that by the joint resolution of June 28, 1870 (No. 87, 16 Stat. 382), Congress confirmed the authority of the grant; that by section 23 of the Texas-Pacific Act of March 3, 1871 (chapter 122, 16 Stat. 579), Congress authorized the Southern Pacific Railroad Company to construct a railroad from Yuma via Los Angeles to Mojave, and made a grant of lands to aid in the construction thereof; that the lands described in Exhibit A and Exhibit

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

B to the bill were granted to the Atlantic & Pacific Railroad Company, and were not granted to the Southern Pacific Railroad Company: that it has been finally adjudged and determined by certain decisions referred to in the bill that all the lands described in those exhibits were restored to the United States by the aforesaid forfeiture act of July 6, 1886; that the Southern Pacific Company never acquired any interest therein; that all said lands so described in Exhibits A and B to the bill were, prior to March 2, 1896, erroneously patented by the United States to the Southern Pacific Company as lands granted to it by the act of March 3, 1871; that the patents thereto were accepted and received by said company under the same error and mistake; that by the act approved March 3, 1887 (Act March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595]), Congress authorized the Secretary of the Interior to issue new patents to purchasers in good faith from railroad companies, of lands erroneously patented to them; that, in case such companies refused to pay the United States $1.25 per acre for such erroneously patented lands within 90 days after demand thereof, the Attorney General should bring suits to recover on such demanded amounts; that by the act approved February 12, 1896, Congress provided that the amount to be demanded and paid in cases where the railroad company had received from its purchasers less than $1.25 per acre should be the amount paid to it by such purchaser; that by the act approved March 2, 1896, Congress confirmed the title of all such bona fide purchasers, and provided that, upon a proper showing before the Secretary of the Interior, the title of such bona fide purchasers should stand confirmed without suit; that the Secretary should procure suit to be brought to recover $1.25 per acre from the railroad company for the quantity of land thus confirmed; that, upon proper showing in the court, a decree should be entered confirming the title of bona fide purchasers, and against the railroad company for the value of such land at $1.25 per acre; that prior to March 3, 1887, the Southern Pacific Railroad Company sold all lands described in said Exhibits A and B to bona fide purchasers; that the purchaser's title was confirmed by said Act of March 2, 1896; that the value of said lands exceeds $2.50 per acre; that to the extent of $1.25 per acre the Southern Pacific Railroad Company holds the proceeds of said sales in trust for the complainant, the appellee herein; that Exhibit A correctly describes the lands, the acreage thereof, and sets forth the names of the bona fide purchasers thereof, and the dates when their title was confirmed by the Secretary of the Interior under the act of March 2, 1896 (chapter 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]); that more than 90 days prior to the commencement of the suit the Secretary of the Interior notified the appellant of said confirmations and demanded the proceeds received from such sales not exceeding $1.25 per acre; that on August 5, 1898, by a decree in suit No. 184 between the parties to this suit, it was finally and conclusively adjudged by the United States Circuit Court that the persons named as purchasers in said Exhibit B were bona fide purchasers from the appellant of the lands therein described, and their title thereto was confirmed; that the said confirmation by the Secretary of the Interior of the titles of bona fide purchasers named in Exhibit A and the confirmation by final decree of the Circuit Court of the title of bona fide purchasers named in Exhibit B were made in faith of and pursuant to proof of such sales made and introduced by the appellant in former suits in the United States Circuit Court between the parties to this suit; that therefore the appellant is estopped in this suit from denying said sales and from denying that it holds the proceeds thereof in trust for the appellee to the extent of $1.25 per acre. The bill further alleged that the determination of the rights of the complainant in the premises involves the construction and interpretation of said acts of Congress and of numerous contracts in writing executed by the appellant to numerous persons, and further involves the establishment and enforcement of a trust in favor of the complainant in the proceeds of said sales and of a lien, "and, in securing thereon to your orator an accounting from defendant Southern Pacific Railroad Company, there is great complexity involved in determining what tracts of land have been sold or contracted to be sold by said company, and at what price, and to whom, and what amount has been paid by way of principal and interest on each of said tracts to said company, and the good faith of the purchasers of such numerous tracts."

The prayer of the bill was that the court determine the true construction of said acts and define the rights and obligations of the parties to the bill, and decree that the defendant therein "holds in trust for your orator the proceeds of all sales of said tracts of land set forth in said Exhibits A and B to the bill, to the extent and amount of $1.25 per acre for all thereof; that such indebtedness be declared a lien upon all funds in the hands of said defendant realized from the sale of said lands; and that the defendant be required to account to and pay over said sums to your orator." And the bill prayed that the defendant therein be required to answer certain interrogatories as to the sales or contracts to sell it had made of tracts of the land described in said Exhibits A and B and the names of the purchasers of each tract, the date of sale or contract, form and character of the instrument, giving the agreed price, dates, and amounts of payments of principal and interest. The appellant filed its answer to so much of the bill as sought discovery, and at the same time demurred to the remainder and residue of the bill for want of equity. The demurrer was overruled, and thereafter the appellant filed its answer to the bill, to which the appellee filed its replication, and upon the pleadings and the admitted facts a decree was rendered adjudging that the appellant pay the appellee $40,124.30 with interest thereon at 7 per cent. per annum from March 2, 1896, amounting to $32,861.80, and $38.80, the costs of suit. From that decree the appeal is taken.

Wm. Singer, Jr., D. V. Cowden, E. E. Hull, and Wm. F. Herrin, for appellant.

Robt. T. Devlin, U. S. Atty., and Geo. Clark, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The question principally discussed in the briefs and argument of counsel is that of the jurisdiction of the Circuit Court to entertain the bill; the appellant contending that the appellee had a complete and adequate remedy at law. In the bill, jurisdiction in equity is invoked on the grounds of discovery, accounting, the establishment of a trust, and the enforcement of a lien. The bill fails to show, however, that there is a trust or a lien involved. Notwithstanding the allegations of the bill, it is apparent that the appellant is not in the possession of a trust fund realized from the sale of government lands which may be identified and pursued by the appellee and subjected to the payment of the price fixed by Congress as the compensation to be paid therefor. It is apparent also, that no lien exists in favor of the appellee enforceable against property held by the appellant. The jurisdiction in equity must be sustained, if at all, upon the ground of the discovery and accounting prayed for. The bill set forth two exhibits wherein were described the tracts of land which were alleged to have been restored to the United States by the forfeiture act of July 6, 1886, and which lands were alleged to have been sold to bona fide purchasers, and it set forth the names of the purchasers. The discovery which it sought was the enumeration of the sales and contracts of sale made by the appellant of each of the tracts of land described in said exhibits, the name of the purchaser of each tract, the dates of the sales or the contracts of sale, the form and character of the instruments in writing, the price of each tract, and the date and amount of each payment of principal and interest thereon. The appellant answered the bill so far as the discovery was concerned, and disclosed fully all the information so sought. At the same time, it demurred to

the remainder of the bill for want of equity, and it now contends that the suit for discovery came to an end upon the filing of a sworn answer to the discovery which was sought. It is doubtful whether, in view of the demurrer, the bill was sustainable in equity on the ground that it involved an accounting. The account does not seem to be so complicated as to require a resort to equity.

In view of the rulings of the Supreme Court in Southern Pacific v. United States, 200 U. S. 341, 351, 26 Sup. Ct. 296, 50 L. Ed. 507, and United States v. Bitter Root Co., 200 U. S. 451, 478, 26 Sup. Ct. 318, 50 L. Ed. 550, we should feel compelled to reverse the decree and direct the dismissal of the bill were it not for the following considerations: The case is not of the class of those of which equity cannot take jurisdiction. Where the subject of the suit is embraced under any of the heads of equitable jurisdiction, the court will take cognizance of it, notwithstanding there may be a remedy at law, unless the defendant raises the objection by demurrer or claims the advantage of it in his answer. Southern Pacific v. United States, supra. In the present case the appellant did by demurrer and answer object to the jurisdiction. But, if the Circuit Court erroneously overruled the objection, the question arises whether the appellant was injured thereby.

An appellate court will not reverse the decision of a trial court for error unless the error has prejudiced the party who complains of it or has deprived him of a substantial right. Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33, 29 L. Ed. 373; Stuart v. Gay, 127 U. S. 518, 526, 8 Sup. Ct. 1279, 32 L. Ed. 191. The sole ground upon which equitable jurisdiction is denied when there is an adequate remedy at law is that the party defendant is thereby deprived of his right to a trial by jury which is guaranteed by the seventh amendment. In Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, it was said:

"The Constitution in its seventh amendment declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' In the federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

The appellant was not, by the ruling of the court below, deprived of a jury trial in this case. There was no issue which could have been submitted to a jury. The decree was rendered upon the bill, the answer, and the admissions of the appellant. There were no questions before the court except questions of law. It is evident that there were, and could be, no controverted questions of fact. It is clear from the authorities that the defendant, in a case such as that which is here presented, may consent to the jurisdiction in equity, and thereby waive his right to a jury trial. We see no substantial reason why, after the defendant has answered admitting, as in this case, the facts on which the complainant's cause depends, leaving only questions of law to be determined by the court, it should not be held that he thereby waives

his right to a jury trial. That was what was done in the present case, and we cannot see that the trial court committed reversible error in rendering the appropriate judgment upon the pleadings. Substantial justice has been done between the parties. It would be an unnecessary burden upon them to require that the decree be reversed, the bill dismissed, and new issues framed in an action at law, in which there could be no issue for a jury, and that the cause be prosecuted to a judgment which could in no respect be different from that which was rendered in the present case.

Error is assigned to the decree in that it requires the appellant to pay for all the lands described in Exhibit A; whereas, it is claimed that the price of 1,920 acres thereof should have been deducted, for the reason that those lands were the subject of the suit between the United States and the Southern Pacific Company, finally decided in 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091, in which suit the United States did not pray for a judgment or a decree for the value of the lands, nor for a money judgment other than the costs of suit, and that by that final decree all rights of the United States in and to said lands were finally adjudicated and set at rest more than 10 years before the present suit was brought, and that the doctrine which forbids the splitting of demands bars the recovery here sought as to those lands. It is pointed out that by the final decree in suit No. 184, referred to in the bill (Southern Pacific Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355), the complainant was authorized to bring an action to recover the value of the lands involved; whereas, in the decision in 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091, no such authority was given. We find no merit in the contention. The suit in which those 1,920 acres were involved was brought to test the claim of the Southern Pacific Company to the lands in controversy and to restrain trespasses thereon by that company and by those claiming under it. No question of the rights of innocent purchasers was involved, and it does not appear that the purchasers of the 1,920 acres here under discussion were made parties to the suit. The only question involved and determined was the right of the railroad company and those claiming under it to the lands described in the bill. There was no prayer for an accounting, and no accounting was had. The decree determined only that, by virtue of patents issued to the railroad companies, the defendants to the suit had no rights whatever. So far as the right and duty of the United States to recover the debt of the appellant for lands erroneously patented to it, which it sold to bona fide purchasers, are concerned, the 1,920 acres of land so referred to now stand in the same attitude as all the other lands involved in the present suit. But, aside from these considerations, a sufficient answer to the contention is found in the fact that the appellant interposed no plea in bar and made no objection in the court below on the ground that there was a splitting of the cause of action. The defendant may, either expressly or impliedly, consent to the institution of separate actions on a single demand. Claflin & Kimball v. Mather Electric Co., 98 Fed. 699, 39 C. C. A. 241. And it is held that his consent will be presumed unless he pleads the former action

in bar or otherwise objects in the trial court. Fox v. Althorp, 40 Ohio St. 312; McDonald v. Tison, 94 Ga. 549, 20 S. E. 427; Gardner v. Patten (Com. Pl.) 15 N. Y. Supp. 324.

It is contended that the court erred in charging interest against the appellant from March 2, 1896, the date of the approval of the last adjustment act, instead of from January 27, 1902, the date when, by the decision in case No. 184, it was finally ascertained who were bona fide purchasers of the land. The bill in case No. 184 was filed in 1891. It was brought against the Southern Pacific Company and numerous persons, who, it was alleged, claimed to be bona fide purchasers for value. It alleged that the United States was the owner of the lands, and that they had been erroneously patented to the railroad company, and it prayed that the patent be set aside, that the title of the United States be quieted, that an accounting be taken of the moneys received by the company from the sale of the lands, that, if it should be found that any of the defendants were bona fide purchasers for value, their title be protected by the decree, and that judgment be rendered against the company for the sum of $2.50 per acre for all of such lands. The company answered denying the right of the United States to the lands, and thereby denying its right to recover any of the proceeds of such lands as had been sold to purchasers. Neither the decision of the Circuit Court nor that of the Supreme Court on appeal (168 U. S. 1, 18 Sup. 18, 42 L. Ed. 355) disposed of the whole case. All that was decided in either court was that the company had no interest in any of the lands involved in the suit. The question of the right of those who claimed to be bona fide purchasers having been left undetermined, the case was remanded for further adjudication. On January 7, 1898, the Circuit Court rendered a decree adjudicating the rights of those who claimed to be bona fide purchasers, but rendered no judgment against the company for the proceeds of lands sold to such purchasers. An appeal was taken by the United States, and on January 27, 1902, the decree of the Circuit Court was affirmed.

It is not disputed that prior to March 2, 1896, the appellant had received from the purchasers the money for the recovery of which the present suit was brought. At that date it had in its possession money which ex æquo et bono belonged to the United States, and it has had the use of that money ever since. Its right to retain it had been challenged in 1891 by the institution of the suit in case No. 184. The institution of that suit was a demand for the money. Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190. The present case is therefore unlike United States v. Sanborn, 135 U. S. 271, 10 Sup. Ct. 812, 34 L. Ed. 112, where the denial of interest was placed upon the ground that more than 10 years elapsed after the payment to the defendant before his right to retain the money was questioned by suit or otherwise.

"The institution of legal proceedings to collect a debt is a sufficient demand for its payment to start the running of interest thereon from the time suit is begun, and this has been held to be true even though the suit is dismissed, if, in a subsequent suit, a recovery be had." 22 Cyc. 1550, and cases

there cited; Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190.

"The pendency of litigation between the parties to an existing debt concerning the same will not of itself suspend interest on such debt during such litigation where the money is not paid into court. It has been held that where there is a legal contest between persons other than the debtor, rendering it doubtful to whom the debt should be paid, the debtor is not generally chargeable with interest during such contest, although if the fund in such cases has been used by the debtor, and has earned interest, the court will allow interest thereon notwithstanding the pendency of the litigation." 22 Cyc. 1558; Potter v. Gardner, 5 Pet. 718, 8 L. Ed. 285; Spring v. South Carolina Ins. Co., 6 Wheat. 268, 5 L. Ed. 614; Crescent Mining Co. v. Wasatch Mining Co., 151 U. S. 317, 323, 14 Sup. Ct. 348, 38 L. Ed. 177.

In Spalding v. Mason, 161 U. S. 375, 396, 16 Sup. Ct. 592, 600 (40 L. Ed. 738) the court said:

"It is no hardship for one who has had the use of money owing to another to be required to pay interest thereon from the time when the payment should have been made."

We find no error in the allowance of interest, and, finding no error for which the decree should be reversed, it is, accordingly, affirmed.

ROSS, Circuit Judge (concurring). I concur in the judgment, but am unable to agree that the suit was not properly brought on the equity side of the court. An action at law in assumpsit to recover the amount claimed by the government to be due it for the land erroneously patented to and sold by the railroad company to bona fide purchasers would not have afforded the complainant the relief to which it was entitled; for discovery was an essential prerequisite to the recovery of the money to which the government was entitled by virtue of the provisions of the acts of Congress referred to in the opinion, since the government could not know the various amounts due it under those acts from the railroad company by reason of the various sales and contracts for sales made by the company to and with the various bona fide purchasers. For that reason, therefore, if for no other, the suit was, in my opinion, properly brought on the equity side of the court, and the court having acquired jurisdiction of it for the essential purpose of finding out for what lands the railroad company owed it money, and how much, the complainant, on the coming in of the company's answer, surely was not driven to the necessity of dismissing its bill and then commencing an action at law to recover the various sums of money shown by the discovery disclosed by the answer to be due the complainant. The equitable jurisdiction of the court having been properly invoked and having attached, the court below, I think, on well-settled principles, proceeded to the final decision of the entire case. United States v. Union Pacific R. Co., 160 U. S. 52, 16 Sup. Ct. 190, 40 L. Ed. 319; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 12, 19 Sup. Ct. 77, 43 L. Ed. 341; Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739; Williamson v. Monroe (C. C.) 101 Fed. 322.

Moreover, I think the sales and contracts were so numerous and of such a nature as to make the required and demanded accounting properly cognizable in a court of equity, where the complainant's rights

in the premises could be more plainly, more adequately, and more completely afforded than in any action at law. See Southern Pacific R. Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507; Southern Pacific R. Co. v. United States, 133 Fed. 651, 66 C. C. A. 581; United States v. Southern Pacific Co. (C. C.) 117 Fed. 544, and the numerous cases there cited.