## FOX v. LOFLAND.

### LOFLAND v. FOX.

### Nos. 6483, 6497.

Circuit Court of Appeals, Third Circuit.
July 20, 1938.

Rehearing Denied Sept. 2, 1938.

Frank A. Moorshead and Abraham Wernick, both of Philadelphia, Pa., for Fox.

Claude B. Wagoner, of Philadelphia, Pa., and Charles E. Kulp, of Camden, N. J. (Wesley, Wagoner, Troutman & McWilliams, of Philadelphia, Pa., of counsel), for Lofland.

Before DAVIS and BIGGS, Circuit Judges, and MARIS, District Judge.*

MARIS, Circuit Judge.

These appeals are from a proceeding which arose out of a contest over the proceeds of two insurance policies issued to the Hartford Sterling Company by the Mechanics and Traders Insurance Company of New Orleans, Louisiana. Prior to March 4, 1931 the Hartford Sterling Company operated a silver plating establishment at Fifth Street and Baltimore Avenue, Fernwood, Delaware County, Pennsylvania. On March 4th and 8th, of that year fires occurred in the company's plant, resulting in considerable damage to the building, its machinery and equipment. The company had two policies of fire insurance with the Mechanics and Traders Insurance Company, totalling $113,500. Shortly after the fire the damage to the building was estimated by the insurance appraisers at $12,498 and the damage to the machinery and equipment at $14,734.

On April 15, 1931 Clayton Lofland, a contractor who had been one of the insurance company appraisers, entered into a written contract with the Hartford Sterling Company to repair the fire damage to the building for the sum of $12,498, the exact amount of the estimated loss. Previously on March 15th Lofland had made a written proposal to the company to repair the fire damage to the machinery and equipment for the sum of $14,734 the exact amount of the loss as estimated by the appraisers. This proposal was tacitly accepted by the company. Thereafter Lofland proceeded with the work. He did not complete the work under either contract, however, and the District Court found as a fact that the value of the work done in the repair of the building was only $6,302.68 and in the repair of the machinery and equipment only $1,325.15.

On July 21, 1931 Lofland obtained from Harry I. Avrach, President and Treasurer of the Hartford Sterling Company, an assignment of the company's interest in the insurance policies "to the extent of $27,232.00 of all moneys due or to become due from the Insurance Company." Later on November 6, 1931, in substitution for this assignment the company, under authority of its board of directors, executed and delivered to Lofland a formal assignment of its claim against the insurance company as collateral security for the payment to Lofland of all sums due him for work upon the building, machinery and equipment, up to the total amount of $27,232, with interest thereon.

There were suspicious circumstances surrounding the fires and shortly after they took place Avrach, President of the Hartford Sterling Company, and one of its employees were arrested, charged with arson and conspiracy to defraud the insurance company, and were later tried in the Court of Oyer and Terminer of Delaware County. The first trial in October 1931 resulted in a mistrial. At the second trial in January, 1932 Avrach was convicted and the employee acquitted. Subsequently on appeal the conviction of Avrach was set aside by the Superior Court of Pennsylvania (Commonwealth v. Avrach, 110 Pa.Super. 428, 438, 168 A. 531), and upon a new trial the indictment against him was nolle prossed.

Following the arrest of Avrach the insurance company declined to pay the loss.

---

*Appointed Circuit Judge June 24, 1938.

After Avrach's arrest, both he and the Hartford Sterling Company being without funds, Lofland at the request of the parties in interest advanced sums totalling $6,203.-35 to meet the expenses of his defense, including the successful appeal to the Superior Court. Prior to that time Lofland's brother-in-law Kirby had loaned $3,180 to Lofland and the company, the latter having given their note for the loan on April 24, 1931. Thereafter Kirby assigned his interest in the note to Lofland. This money the company used for its proper corporate purposes.

Two suits were brought by the Hartford Sterling Company and Lofland (the latter acting by virtue of his assignment) against the insurance company in a Court of Common Pleas of Philadelphia County, Pennsylvania, and were later removed to the District Court for the Eastern District of Pennsylvania. On March 4, 1932 a petition in bankruptcy was filed against the company by a creditor alleging that the assignment of the fire policies to Lofland was preferential. After hearing, the bankruptcy proceeding was dismissed by the District Court. Immediately upon the termination of the criminal proceedings efforts were made by the company and its creditors to effect a settlement with the insurance company. These efforts were, however, in the beginning unsuccessful because of the failure of the parties to come to an agreement as to the amount payable to Lofland out of the proceeds.

On June 6, 1934 Clarence H. Fox was appointed by the Court of Common Pleas of 'Delaware County, Pennsylvania, receiver of the Hartford Sterling Company upon a bill filed by a creditor. On July 27th of the same year the receiver petitioned the Court of Common Pleas for leave to compromise for $35,000 the two suits pending in the District Court against the insurance company. Lofland and other creditors filed opposing answers and after hearing the court ordered the objecting creditors to file a bond guaranteeing that the creditors favoring the compromise would receive as great an amount as had been offered in settlement. On December 26, 1934 Lofland appealed to the Supreme Court of Pennsylvania from this order and that court on May 27, 1935 dismissed his appeal. Gordon, Secretary of Banking, v. Hartford Sterling Co. et al., 319 Pa. 174; 179 A. 734. Thereafter the claim against the insurance

company represented by the two suits in the District Court was settled by an agreement that the insurance company should pay into the registry of the District Court the total sum of $36,000, $26,484.58 in one suit and $9,515.42 in the other, "for distribution according to law as the rights of each of the several parties may appear" and the clerk of the court was directed not to pay any part of the sum to the receiver of the Hartford Sterling Company "until the rights of the parties in these proceedings shall have been judicially determined and adjudicated and the amounts of their claims to the said fund legally and properly determined."

On November 12, 1935, the District Court referred to a special master the matter of the distribution of the sum so deposited. After extensive hearings the special master reported that Lofland had performed work under the contract to repair the building of the value of $6,009.74, which amount the master subsequently increased by $292.94, making a total sum of $6,302.-68, on which he allowed interest from August 1, 1931. He also allowed Lofland on his claim for services in rehabilitation of the machinery and equipment the sum of $1,325.15, with interest from August 1, 1931. These sums he held were payable to Lofland out of the insurance proceeds by virtue of his assignment. The balance of the fund he awarded to the receiver of the Hartford Sterling Company. Exceptions to the special master's report were filed by both Lofland and the receiver. After argument the District Court dismissed all the exceptions, confirmed the report and decreed distribution in accordance therewith. From its decree both Lofland and the receiver have appealed.

█ Upon his appeal Lofland contends that the court below erred in refusing to award to him the entire sum of $27,232 with interest. This sum represents the full amount of his two contracts and is the sum which was referred to in the assignments made to him. In this connection he relies upon the assignment of July 21st which was absolute in form. It is quite clear, however, as the Court below found, that this assignment was entirely superseded by the more formal document of November 6th, and it is equally clear that the latter was not intended to be an absolute assignment to Lofland of the sum mentioned but merely an assignment to secure to him the pay-

ment of the amounts which might become due him under his contracts for the repair of the building, machinery and equipment.

Lofland further argues, however, that he is entitled to the full amount mentioned in the assignment by reason of his having expended substantially that sum for the benefit of the company. His contention is that the work he actually performed amounted to $12,046.20 on his contract for the repair of the building and $5,367.30 for the repair of the machinery and equipment, both amounts being expressly covered by the assignment, and that in addition the sum of $6,203.35 advanced by him for the defense of Avrach and the Kirby loan of $3,180 should have been included in the amount payable thereunder since these sums had been advanced for the benefit of the company and the defense fund at least was required in order to pave the way for recovery of the insurance money.

As to the work done under the contracts the court below found that there was due to Lofland for the repair of the building only $6,302.68 and for the rehabilitation of the machinery and equipment only $1,325.-15. This finding of fact was supported by the evidence and we are not at liberty to disturb it. Nor is there any merit in Lofland's contention that the sum advanced for the defense of Avrach and the Kirby loan should be included in the amount payable to him under the assignment. So far as the Kirby loan is concerned but little need be said. The loan was made to the company in April, 1931, long before the assignment of November 6th was executed. The loan was not referred to in the assignment and it is clear that it was not intended to be covered by it.

The sums advanced by Lofland for the defense of Avrach are in a somewhat different position. Their use materially assisted in raising the fund since it is obvious that the conviction of Avrach would have dealt a serious blow to the prospect of recovery from the insurance company. Here again, however, it is impossible to find any indication in the assignment that these sums were intended to be covered. The fact is that nearly all of the money involved was advanced after the assignment of November 6th was given. This Lofland attempts to meet by contending that the assignment was amended by a subsequent oral agreement from which an equitable lien in his favor arose. The court below, however, found that there was insufficient evidence of the creation of such a lien and it rejected Lofland's contention. We are satisfied that its finding was correct and should not be disturbed.

The appeal of the receiver raises more difficult questions. The first of these relates to the award of interest to Lofland upon the amounts allowed him under the assignment for the work done upon the building, machinery and equipment. The court below based this award upon the terms of the assignment. The reference to interest in the assignment, however, is clearly but a recital of such interest as might be payable to Lofland under his contracts, for which the assignment was but security. The assignment was intended to secure the payment of such interest as might otherwise be payable. It did not constitute an independent obligation for the payment of interest. We must, therefore, look elsewhere for the obligation to pay interest if it existed.

The record discloses that on April 13, 1931 it was agreed in writing between Lofland and the company that payment for the repairs to the building under the contract which was executed two days later should not become due until the claim for the damages to the building was allowed by the insurance company and payment therefor made to the company or to the mortgagees. The building contract contained no agreement for the payment of interest and the record discloses no other reference thereto. Under these circumstances Lofland would be entitled to interest only as damages for the detention of his money after it became payable by the company. The latter, however, has not yet received the money from the insurance company. By the express agreement of the parties, therefore, the sum due Lofland is not yet payable by the Hartford Sterling Company. That company has consequently not detained his money and does not owe him interest on it.

Furthermore, as we have seen, the fund by agreement was paid by the insurance company directly into the registry of the court below for future distribution to the parties judicially determined to be entitled thereto. It is well settled that where a disputed fund is deposited in court, interest is not recoverable on it during the time it remains so deposited. Oliphant v. Frost, 9 Pa. 308; Bowman v. Wilson, C.C., 12 F. 864. Under these circumstances it would be highly inequitable to penalize the

company by an award of interest in Lofland's favor. This is especially true since it is clear from an examination of the record that a large portion of the delay was directly due to Lofland's own conduct. In an attempt to collect more than twice the amount awarded him by the court below Lofland kept the matter in litigation for more than four years. In the proceedings before the special master twenty-two meetings were held and 2452 pages of testimony were taken. As the special master stated, "An enormous amount of time and expenses might have been saved had there been a frank recognition at the outset by Mr. Lofland that there was not the slightest use in his attempting to prove a claim for which he was not entitled to be paid. He declined to recognize this fact, hence the inexcusable length of the proceedings."

What we have said with regard to the allowance of interest on the award for work done under the contract for the repair of the building applies equally to the award made Lofland for work done in rehabilitating the machinery and equipment. In both cases it was error for the court below to allow interest upon the amounts awarded.

The receiver also complains of the refusal of the court below to charge the fund awarded to Lofland with certain counsel fees and expenses of the proceedings. The first of these are the fees of counsel for the plaintiffs in the suits in the court below against the insurance company. Clearly the fees of counsel who produced the fund now in the registry of the court should be paid out of that fund before any distribution is made either to Lofland under his assignment or to the receiver. We think the court below correctly held, however, that it was not the intention of the parties to the assignment to diminish Lofland's interest in the fund by counsel fees unless the balance distributable to the receiver is insufficient to pay them.

The expenses of the reference and the counsel fees and expenses of the receiver in opposing Lofland's claim are in a different position. The special master refused to charge these expenses against Lofland's share of the fund and the court below held that in refusing to do so he exercised a proper discretion. With this conclusion we agree. The matter was one peculiarly within the discretion of the court and an examination of the whole record has satisfied us that its discretion was not abused in this respect. While it is true

that the excessive claim made by Lofland was properly described by the special master as "coming very close to a fraudulent claim" and, as we have already said, his attempt to collect this amount greatly prolonged the proceedings, nevertheless it must not be overlooked that the receiver himself attempted to defeat the whole of Lofland's claim upon a ground found by the court to be untenable. He strongly contended before the special master that Lofland was entitled to nothing because his assignment was fraudulently procured and, therefore, void. Lofland opposed this contention successfully. It is significant that the receiver in his argument in this court did not urge that this action of the court below was erroneous. We can only conclude that the receiver, by pressing this groundless defense, himself contributed somewhat to the delay and expense of which he complains.

Complaint is also made by the receiver of the allowance by the court below of $1,325.15 to Lofland for work done in the repair of the machinery and equipment. His contention is that Lofland's claim was made upon the basis of a contract, whereas the award to him was based upon a quantum meruit. We find no merit in this contention, however. While it is true that Lofland did claim upon a written proposal verbally accepted the evidence established that he had only done a small portion of the work called for thereby. It followed that he was entitled merely to the value of the work actually done and not to the contract price. We think that the court below correctly held that the assignment which he received was intended to secure the payment to him of whatever might be due him for repairs actually made by him. It, therefore, covered the work actually done on the machinery and equipment and for that work he was entitled under the assignment to prior payment out of the fund. What we have said disposes of the receiver's final contention that Lofland was not entitled to any payment under the assignment because the work he contracted to do was not substantially completed by him.

The decree of the court below is modified by reducing the award to Clayton Lofland by the sum of $2,666.33, the amount of interest awarded to him, and increasing the award to Clarence H. Fox, Receiver of the Hartford Sterling Company, by the same amount. As so modified the decree is affirmed.