**LOS ANGELES SOAP CO. v. UNITED STATES.**

Civil Action No. 3064.

District Court, S. D. California, Central Division.

March 28, 1944.

Frank Mergenthaler, Isidore B. Dockweiler, and Thomas A. J. Dockweiler, all of Los Angeles, Cal., for plaintiff.

Chas. H. Carr, U. S. Atty., by Walter S. Binns, Asst. U. S. Atty., both of Los Angeles, Cal., for defendant.

## JAMES ALGER FEE, District Judge.

This action is brought for the recovery of $28,443.31 collected as interest upon certain taxes heretofore paid to the Collector of Internal Revenue by consideration of this court. The background for this action, then, is a previous suit brought by the Los Angeles Soap Company against Nat Rogan as Collector of Internal Revenue of the appropriate district, for declaratory relief and for an injunction against the collection of the excise tax levied under Section 602½ of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 778, upon the first domestic processing of coconut oil. It was the claim of the soap company that the tax was unconstitutional and void. The matter came on for hearing before Honorable Leon R. Yankwich and on February 11, 1936, a temporary restraining order was entered which contained the following provisions:

"Plaintiff, however, to continue to file monthly returns with the defendant.

"Provided however, that the plaintiff, Los Angeles Soap Company, give security in the amount of the said exactions claimed to have become due on the 31st day of January, 1936, in the sum of $28,618.48, said security to be in the form of a Cashier's Check of the Farmers and Merchants National Bank of Los Angeles, in said amount, said check to be made payable to the order of R. S. Zimmerman, Clerk of the United States District Court, Southern District of California, said check to be deposited in the Registry of the Court by the said Clerk pending the further order of this Court, and to deposit monthly amounts, hereafter, as may be disclosed by the said monthly returns."

Three payments were made under this order.

Thereafter, after a full hearing, Judge Yankwich, in an able opinion, found this section of the Act valid and the court without power to grant relief. An appeal was taken therefrom. In the order allowing appeal entered April 14, 1936, there were the following provisions relating to the deposits:

"Provided, however, that the plaintiff, pending the said appeal, shall in accordance with the Revenue Laws of the United States, continue to file with the defendant as Collector of Internal Revenue monthly returns of the tax imposed by Section 602½ of the Revenue Act of 1934, and provided further, however, that the plaintiff will deposit in the registry of this Court on or before the last day of each month the amount of tax disclosed by such monthly returns, and in the event of the failure of the plaintiff to file said returns or deposit said moneys within ten (10) days after said time this order shall thereupon terminate insofar as it supersedes and suspends the order and decree of April 1st, 1936, and insofar as it enjoins and restrains the defendant as hereinbefore provided."

Payments were made regularly under the terms of this order.

The Circuit Court of Appeals dismissed the appeal from the order of Judge Yankwich on May 25, 1937, and issued mandate thereon. Judgment entered on this, under date of June 8, 1937, and provided in part as follows:

"It is further ordered, adjudged and decreed that defendant's costs in the sum of Six Thousand Four Hundred Eighty-eight Dollars and Seventy-five Cents ($6,488.75) in addition to the sum of Twenty-five Dollars and Fifty Cents ($25.50) already taxed herein, be and the same are assessed against plaintiff;

"It is further ordered, adjudged and decreed that upon payment of said costs, the said sum of Six Hundred Forty-eight Thousand Eight Hundred Seventy-four Dollars and Fifty-four Cents ($648,874.54) deposited by plaintiff in the registry of this court, be delivered to Nat Rogan as Collector of Internal Revenue for the Sixth District of California, to be applied against any tax now due from plaintiff under Section 602½ of the Revenue Act of 1934 without prejudice to the assertion against any deficiency in tax or interest upon such

tax as may appear upon an audit of plaintiff's accounts by the Treasury Department of the United States, and without prejudice to the assertion by plaintiff of no deficiency in tax or interest upon such tax."

Thereafter, the Collector demanded and received $28,443.31 as interest upon the amounts totaling $648,874.54 paid into the registry of the court by the soap company under order of court and by the court paid directly to the Collector. .

▆▆ There are no controlling decisions which have been called to the court's attention. The assessment of interest in the absence of a statute or a contract depends on the equities even in a law action. No assessment thereof against the sovereign is possible without an express provision of law. The United States and the individual stand on entirely different footings as regards the assessment of interest against them.[1]

A consideration of the situation as shown by the orders of the court is as important as reconnaissance before a battle. The first time interest is mentioned is in the final judgment turning the fund over to the Collector. That provision amounts only to a general reservation of the question as to the principal sums and the interest. No question as to the amount of the principal sums has been raised. The sole purpose of these protective reservations must have been to release the fund to the Collector immediately without the necessity of computing the exact sum due.

▆▆ The plaintiff, Los Angeles Soap Company, did not tender into court in the first instance, the amount of the tax due. If it had been permitted to retain this money and the use thereof, a sufficient ground would exist for the assessment of interest against it. The court on its own motion apparently wisely provided for the payment of these amounts into its registry according) to the terms of the monthly returns. The interest of the United States was fully protected thereby. If the court had conceived the notion that the United States was entitled to any money in addition thereto at that time, in the event of ultimate determination favorable to it, unquestionably provision would. have been made therefor. · The court did not even in the original order, require the deposit of a sum equal to interest upon the first installment of tax which was then about ten days overdue. This construction is strengthened by the terms of the second order granting the appeal in which no mention of interest occurs. The court, by the final judgment, turned over to the Collector the full sum exacted under the previous orders. Thereby, all the purposes of the United States were subserved. There was no expense or labor of collection and no chance of loss. The court therefore, must be deemed to have acted in the light of the usual rule that a payment into court prevents the further running of interest.[2] If there had been further damage[3] accruing to the United States, the court would have required security therefor when the fund was deposited. As it is, this primary order settled all questions arising as to the tax except the amounts so properly levied and deposited.

It is of interest to note that the United. States, through the Clerk of this court, has apparently already collected from plaintiff $6,488.75 or one percent of this fund for the simple operation of retaining custody thereof.

▆▆ But it is objected that the ordinary rule does not apply here because the soap company is at fault.[4] No principle should

---

[1] United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935.

[2] Franklin Bank v. Bruns, 84 Ohio St. 12, 95 N.E. 385, Ann.Cas.1912B, 1002, 1004 Note at 1005.

[3] "Where money is retained by one man against the declared will of another, who is entitled to receive it, and who is thus deprived of its use, the rule of courts,· in ordinary cases, is, in suits brought for the recovery of the money, to allow interest as compensation to the creditors for such loss. Interest in such cases is considered as damages, and does not form the basis of the action, but is an incident to the recovery of the principal debt.

The right of action is the right to compel the payment of the money which is being retained. When he who has this right commences an action for its enforcement, he at the same time acquires a subordinate right, incident to the relief which he may obtain, to demand and receive interest. If, however, the principal sum has been paid, so that, as to it, an action brought cannot be maintained, the opportunity to acquire a right to damages is lost." Stewart v. Barnes, 153 U.S. 456, 462, 14 S.Ct. 849, 851, 38 L.Ed. 781.

[4] The plaintiff in interpleader is really at fault because the money is not paid to the party entitled. Yet such a party is

be more firmly established than the right of the citizen to test the validity of measures taken, without his actual consent, by the government, against his property. No penalty should be invoked when he attempts, by the use of the courts, to prevent an alleged illegal exaction. Here the attitude of the Collector seems to border on the vindictive.

It is true that coercive measures must be present in order to assure prompt collection of the revenue. The provision in this law for interest upon unpaid installments must be classed as coercive in nature. But this principle is not applicable here. The taxpayer has not had the use of the money and no punishment should be inflicted for his attempt to have the matter legally settled. These payments were actually made by the taxpayer and were received by the United States. In the first instance, these were made conditioned upon the payments legally being due. But, if the tax was valid, the soap company could not get them back. No further coercion was necessary beyond the order of the district court.

The defendant cites as sole authority to the contrary The Grape Shot, C.C.La., 1874, 10 Fed.Cas. page 987, No. 5,703. But that opinion relates only to the question of whether interest should be paid on supplies and loans obtained on a bottomry bond in admiralty. The cause was tried before the war between the States. The decision was reversed by the Supreme Court of the United States and the cause sent back to the federal court long after the war in order to determine whether any of the items were properly chargeable against the bond. Of course the expression about interest, although not noticed by the Supreme Court, had no validity.

■ If the case means what some of the language removed from the context might indicate, it is sufficient to say it is contrary to the few federal cases which have touched on the subject.[5] The United States is not entitled to interest on amounts paid to its Collector, impounded in the registry of its own court, by order thereof.

■ There was, however, a sum of in-

terest due upon the first litigated installment of the tax due January 31, 1936, to the date of the deposit of the principal in court which was protected by the reservations in the final judgment. Plaintiff is entitled to recovery of the entire sum in controversy with the exception of this sum of interest above mentioned.

Findings and judgment for plaintiff may be submitted.

---

absolved upon deposit of the principal in court even though interest upon the sum so deposited would normally accrue according to the terms of an express contract. See Franklin Bank v. Bruns, supra.

5 Himely v. Rose, 9 U.S. 313, 3 L.Ed. 111; Bowman v. Wilson, C.C., 12 F. 864; Groves v. Sentell, 5 Cir., 66 F. 179; Potter v. Gardner, 30 U.S. 718, 8 L.Ed. 285; Fox v. Lofland, 3 Cir., 98 F.2d 589; Seth Spring & Sons v. South Carolina Ins. Co., 21 U.S. 268, 5 L.Ed. 614.