KAUFMAN *v.* TREDWAY.

ERROR TO THE SUPERIOR COURT OF THE STATE OF PENNSYLVANIA.

No. 17. Argued October 24, 1904.—Decided November 28, 1904.

In an action by a trustee in bankruptcy to recover a preferential payment the insolvency of the bankrupt at the time of payment and whether the payee had reasonable cause to believe that a preference was intended are questions of fact determined by the verdict of the jury.

The commencement of an action by a trustee in bankruptcy to recover a preferential payment is a demand and he is entitled to interest from that time.

One who after receiving a preferential payment from the bankrupt, loans him money in good faith without security and which actually passes into the bankrupt's possession, is entitled to have the amount loaned set off from the amount recoverable by the trustee.

On August 20, 1898, Gustave Kaufman filed his petition in bankruptcy and was subsequently adjudged and decreed a bankrupt. W. T. Tredway was appointed trustee of his estate. On July 24, 1899, the trustee commenced suit in the Court of Common Pleas, No. 3, of Allegheny County, Pennsylvania, to recover from Joseph S. Kaufman the sum of $4,086.64, charged to have been given, on August 4, 1898, by the bankrupt to the defendant as a preference. The trial resulted in a judgment in favor of the trustee for $1,086.64 and interest. This judgment was affirmed on appeal by the Superior Court. An application for a further appeal to the Supreme Court of the State was denied, and thereupon this writ of error was sued out to review the judgment of the Superior Court. Section 60 of the bankrupt act is as follows:

"Sec. 60. *a.* A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the

enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"*b*. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.

"*c*. If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him." 30 Stat. 544, 562, c. 541, July 1, 1898.

*Mr. Joseph A. Langfitt* and *Mr. William Kaufman* for plaintiff in error:

The payment of $1,086.64 made August 4, 1898, was not a voidable preference within § 60 of the bankrupt act.

As to the terms "insolvent" and "reasonable cause to believe" and proof necessary to establish same, see *Perry* v. *Booth*, 80 N. Y. Supp. 706; *S. C.*, 67 App. Div. 235; *Sirrine* v. *Stover-Marshall Co.*, 64 S. Car. 457, and cases cited; *Harmon* v. *Feldheim*, 131 Michigan, 470; *Congleton* v. *Schreihofer*, 54 Atl. Rep. (N. J.) 144; *Netter* v. *Refowich*, 12 Dist. Rep. (Pa.) 196.

If the payment of $1,086.64 was a voidable preference, then plaintiff is entitled to a set-off of $767 returned by him to the bankrupt four days afterwards. No interest should have been allowed. Collier on Bankruptcy, 3d ed., 369.

*Mr. H. L. Castle*, with whom *Mr. William A. Stone* was on the brief, for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

Whether the bankrupt was insolvent on August 4, 1898, when he paid the money to his brother, the defendant, and whether the latter had reasonable cause to believe that it was intended thereby to give a preference, are questions of fact, determined by the verdict of the jury, and not open to review in this court. *Hedrick* v. *A., T. & S. F. R. R. Co.*, 167 U. S. 673, 677; *Bement* v. *National Harrow Company*, 186 U. S. 70, 83; *Jenkins* v. *Neff*, 186 U. S. 230, and cases cited in opinions. It is suggested that the trial court erred in admitting testimony of transactions between the brothers some six or seven months prior to the payment by the bankrupt to the defendant; that such transactions were too remote from the time of the preference to throw light on the question of knowledge. We think that the testimony, whether of much or little value, was competent, and that it was not error for the court to admit it. *Clune* v. *United States*, 159 U. S. 590, 592.

We see no reason to doubt the propriety of allowing interest on the claim from the commencement of the action. Such commencement is itself a demand.

The principal contention, however, is that the state court erred in ruling that the sum of $767, loaned by the defendant to the bankrupt on August 8, could not be considered as a set-off. It appeared that four days after he had received the money paid to him in preference the defendant handed to the bankrupt $767, on the latter's request for money to pay his employés. There was no testimony tending to show what became of this money, whether it was used in paying employés, or whether the payments, if made, were for wages earned within three months before the date of the commencement of proceedings in bankruptcy. All that appeared was the fact of the loan and the expressed purpose thereof. Under these circumstances the court instructed the jury that the defendant had not established his claim to a set-off, as author-

ized by paragraph " *c* " of section 60. This presents a distinct question of law.

The trial court, and its views were approved by the Superior Court, held that the statute required not merely that the creditor in good faith gave the debtor credit without security and that the money or property in fact passed to the debtor and became a part of his estate, but also that it remained such until the time of the bankruptcy and was transferred to the trustee, or at least that it was used in payment of preferred debts. In its opinion, on a motion for a new trial, it said:

"Evidence that the debtor got the money for another purpose certainly is not evidence that he turned it over to the trustee. The most that defendant can ask—and this we would probably hold—is that money shown to have been given and used to pay a preferred debt would entitle the defendant to a set-off."

It will be noticed that the words used in paragraph "*c*" are not "the bankrupt's estate," but "the debtor's estate." "Debtor" is also found in the preceding clause as descriptive of the one to whom the credit is given. While the same person is both debtor and bankrupt, first debtor and then bankrupt, the use of the former term is suggestive of the time of the transaction as well as the status of the recipient of the credit. The paragraph further provides that "the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set-off." It is the non-payment and not the fact that the property remains still a part of the debtor's estate which entitles to a set-off. It would seem that if Congress intended that which the trial court held to be the meaning of the statute it would have said "which becomes a part of the bankrupt's estate" or "which becomes and remains a part of the debtor's estate until the adjudication in bankruptcy."

Further, Congress provided that the creditor act in good faith. Thus it excluded any arrangement by which the cred-

itor, seeking to escape the liability occasioned by the preference he has received, passes money or property over to the debtor with a view to its secretion until after the bankruptcy proceedings have terminated, or with some other wrongful purpose. It meant that the creditor should not act in such a way as to intentionally defeat the bankrupt act, but should let the debtor have the money or property for some honest purpose. Requiring that it should become a part of the debtor's estate excluded cases in which the creditor delivered the property to a third person on the credit of the debtor, or delivered it to him with instructions to pass it on to some third party. The purpose was that the property which passed from the creditor should in fact become a part of the debtor's estate, and that the credit should be only for such property.

Still again, to require that the creditor should not only in good faith have extended the credit and that the money or property should have passed into and become a part of the debtor's estate, but that he should also show the actual disposition thereof made by the debtor would in many cases practically deny the creditor the benefit of a credit which he had extended in good faith. Suppose three months and a half before bankruptcy the creditor, in good faith, sells and delivers a bill of goods to the debtor, a merchant, how difficult it would be to show what had become of each particular article on that bill, or what was done with the money received for those that had been sold; and the same when, as in this case, money was delivered to the debtor. If Congress had intended to require such proof it would seem that it would have used language more definite and certain. If the creditor has acted in good faith, extended credit without security, and the money or property has actually passed into the debtor's possession, why should anything more be required? Has the creditor not been already sufficiently punished when, having received money or property in payment of a just debt, he is compelled to refund that to the trustee because he believed, or had reason to believe, that the debtor, in paying that debt, preferred him?

Why should he be punished in addition by the loss of the benefit of a credit given in good faith?

We are of opinion that the state court erred in its construction of the statute and in peremptorily denying to the creditor the benefit of the credit. For these reasons the judgment of the Superior Court is reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.