### In re CRAIG, REED & EMERSON, Inc.
### No. 44210.

District Court, D. Massachusetts.

Jan. 15, 1931.

Jacobs & Jacobs, of Boston, Mass., for Plymouth County Trust Co.

Phipps, Durgin & Cook, of Boston, Mass., for trustee in bankruptcy.

LOWELL, District Judge.

This proceeding by a trustee in bankruptcy to recover a preference was brought by a petition before Mr. Referee Ryan. The defendant consented to the jurisdiction of the referee, but, his decision being adverse, it now contends that the referee was incompetent to try the case even with its consent. "Second thoughts are best" is a good maxim, though its application here is unsportsmanlike. The contention is without merit. Section 23b, Bankr. Act (11 USCA § 46(b), gives power to "courts" by consent, and "court" may include the Referee (section 1 [11 USCA § 1]).

The point has often been assumed, or mentioned in obiter dicta, though apparently not adjudicated. Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897. See Foster v. Manufacturers' Finance Co. (C. C. A.) 22 F.(2d) 609.

The bankrupt had been a depositor with the defendant for many years. It had borrowed money from it in the past on time loans, which it had been unable to repay. Two years before the bankruptcy these loans were changed into demand loans. In June, 1929, the bankrupt being in failing circumstances, a conference was held between the officers of the bankrupt and certain creditors to consider what should be done. At this conference it was decided that the bankrupt should be allowed to go on making shoes to see if it could pull through. The president of the defendant was present at this conference, though he took no part in the public discussion. There was conflicting evidence as to whether he made a side remark to the effect that the bank would give the bankrupt more time. On July 11 the bankrupt deposited in the Campello branch three checks, aggregating $15,100.78. On the morning of the 12th of July these checks had been sent to the main office, and then the bank set off against the demand notes the sum of $4,027.-29, and thereafter honored only checks for wages, which it did under the advice of counsel that wage payments would be preferred under an assignment for the benefit of creditors. A day later, when the bank had discovered that the checks for $15,100.78 were good, it set off this amount against the demand notes, and two days after that it set off two further sums of $347.76 and $1,000.-96. On July 13th the bank wrote to the bankrupt informing it of what had been done. The bankrupt vainly protested. It was told that it must make an assignment for the benefit of creditors. This assignment was drawn up by the bank's attorney, one of the subordinate officers of the bank being the assignee. The assignee proceeded to wind up the affairs of the concern, and about two months later the petition in bankruptcy was filed. At some time between July 10th and July 14th the following entry was made on the ledger card: "Show all checks to Mr. Crocker." (Crocker was the vice president of the bank.) The evidence as to when this entry was made was conflicting; the bookkeeper saying that it was made on July 10th, Mr. Crocker saying July 15th.

The referee ruled that the first set-off of $4,027.29 was valid, but that the others constituted preferences. He allowed interest on the amount found due from the date of the filing of the petition in bankruptcy. Both parties petitioned for a review; the defendant contending that the referee was wrong in not allowing all set-offs, and the trustee contending that he was wrong in allowing the first set-off.

■ There is no question that on July 12th the defendant knew that the bankrupt was insolvent and that the set-off would give it a larger percentage of its debt than other creditors. The defendant insists that as the deposit of $15,000 was in the usual course of business, there can be no preference, as under those circumstances the bank had the right of set-off. It is true that the deposit was in the usual course of business; but that course of business could be kept up only as long as the defendant allowed it to continue. By its own act of making the first set-off and refusing to pay checks, it thereby changed the ordinary relation of banker and depositor. While there was no proof of collusion between the parties, the evidence shows that the bank allowed the bankrupt to continue in business, with the intention, formed either in June, or at any rate in July, of thereby getting a greater share of the bankrupt's property than other creditors. Every deposit made by the bankrupt after the conference in June was a transfer which carried with it the potentiality of a preference. The remark of the court in New York County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380, much relied on by the defendant, that a deposit in a bank does not decrease the assets of a depositor, is true; but the statement was made in connection only with the ordinary relation of a banker and depositor, where the depositor gets in return for his deposit the obligation of the bank to repay him. The set-offs here in question diminish the estate of the bankrupt, because they allocate to the bank a part of its property which should be divided among all creditors. All the deposits made after the conference in June come within Judge Morton's lucid statement of the law:

"Although a depositor may be insolvent, and may be known by the bank to be insolvent at the time when a deposit is made, the bank is still entitled to apply the deposit on its claim. It is only when affairs have reached such a point that both parties to the deposit know, or as reasonable persons are bound to know, that the effect of making it will in all probability be to give the bank an advantage through its right of set off, that the deposit and the subsequent application

of it amount to a recoverable preference." Bailey v. Merrimack Bank (D. C.) 283 F. 514, 516.

The learned referee apparently thought that the date of the entry on the ledger card was of importance, but it makes no difference whether the entry, "Show all checks to Mr. Crocker," was made on the 10th or the 15th. Actions speak louder than words, even than written ones.

The ruling of the referee as to the three last set-offs is affirmed. As to the matter of interest on this amount, I think that he was in error. Interest is not usually allowed before a demand. In this case there was no demand, and interest should run from the date of the filing of the petition to recover the preference. Kaufman v. Tredway, 195 U. S. 271, 25 S. Ct. 33, 49 L. Ed. 190. As to the first set-off of $4,000, I find that the referee was in error and it should not have been allowed.

Let a decree be entered for the petitioner in the sum of $20,476.79, with interest from December 3, 1929.