COFFIN, Chief Judge.
 

 This appeal arises out of an' action brought in the United States District Court for the District of Puerto Rico by the appel-lee, Constructora Maza, Inc. (“Maza”), a “debtor-in-possession”, to invalidate as “voidable preferences” certain transfers of assets made by Maza to the appellant, Ban-co de Ponce (the “Bank”), within four months preceding Maza’s filing a petition
 
 *575
 
 under Chapter XI of the Bankruptcy Act. The action was tried to the court, which found (1) that the contested transfers were made while Maza was insolvent and (2) that the Bank had reasonable cause to believe that Maza was insolvent at the time of the transfers. The court therefore concluded that the transfers were voidable preferences under section 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1976), and held further that none of the transfers fell within the “set-off” exception of section 68 of the Act, 11 U.S.C. § 108.
 

 The Transfers
 

 The uncontested facts may be summarized as follows.
 

 Constructora Maza, Inc., was engaged in the construction of single and multiple-unit residential structures in the San Juan area. Maza’s commercial relationship with the Bank began at the end of 1973 and continued actively until Maza filed its petition for bankruptcy on March 2, 1976. In order to meet the cash flow needs of its expanding business, by mid-1974 Maza had obtained lines of credit for demand loans of $2,000,-000 from the Bank. Although Maza delivered a $1,000,000 certificate of deposit to the Bank as collateral for one of these loans, the Bank failed to perfect a security interest in the certificate, and this line of credit remained unsecured until December, 1975. As Maza’s cash needs increased, so did the amount of its indebtedness to the Bank. In addition to obtaining further credit through conventional loans, beginning in January of 1975 Maza began to make substantial overdrafts against its checking account with the Bank. These overdrafts were periodically covered by unsecured notes issued by Maza to the Bank. As of November 28, 1975, Maza owed the Bank $2,000,000 in notes issued during the year to cover overdrafts plus a current overdraft of $1,245,780.14.
 

 In December, 1975, the Bank apparently realized that Maza’s indebtedness was not properly secured and sought to obtain adequate collateral. On December 9, 1975, at the request of Mr. Roberto Feria, the Bank’s branch manager who handled Maza’s account, Maza assigned to the Bank all of the retainages and progress billings due Maza on its outstanding construction projects. In consideration for this assignment, the Bank advanced an additional $1,000,000 to Maza, which was credited to Maza’s account to reduce its existing overdraft. On January 14, 1976, the Bank requested Maza to reaffirm its assignment of these retainages and progress payments. On February 3, 1976, the Bank debited $1,000 to Maza’s checking account for legal services rendered in preparing these assignments.
 

 On December 24, 1975, Mr. Miguel Fernandez, who took over Maza’s account from Feria, met with Maza and insisted on additional collateral for Maza’s indebtedness, which then totalled $2,222,939. The parties agreed that if Maza assigned certificates of deposit in this amount to the Bank, the Bank would extend an additional $800,000 credit to Maza upon receiving a current statement of Maza’s financial condition. On December 26, Maza executed a promissory note for $2,222,000 and pledged as security a certificate of deposit in the amount of $2,222,939.49. The Bank applied this note and an additional loan of $778,000 to offset four outstanding loans to Maza.
 

 On February 5, 1976, the Bank requested, and received from Maza, a pledge of three notes issued to Maza by San Pablo Doctor Center, Inc., totalling $325,000. The Bank credited the amount of this pledge to Maza’s account to reduce its overdraft.
 

 Finally, on February 27, 1976, the Bank informed Maza that it had set off its indebtedness of $2,222,939.49 to Maza, evidenced by the certificate of deposit in that amount Maza had pledged to the Bank on December 26, with the promissory note for $2,222,000 executed that same day.
 

 
 *576
 

 Voidable Preferences
 

 Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1), defines a “preference” as:
 

 “. .
 
 .a transfer ... of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.”
 

 Section 60(b), 11 U.S.C. § 96(b), further provides:
 

 “Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.”
 

 The burden of proof in a case involving an allegedly voidable preference is on the trustee or debtor-in-possession
 
 [1]
 
 to prove each of the elements in sections 60(a) & (b) by a preponderance of the evidence. The district court found that Maza had satisfied its burden of proving each of those elements with respect to the transactions described above. The parties agree that these transactions were transfers of assets within the meaning of the Act, to the Bank, for or on account of an antecedent debt, within four months of Maza’s filing of its Chapter XI petition, the effect of which was to allow the Bank to recover a greater percentage of its debts from Maza’s assets than other creditors of its class. The Bank argues, however, that Maza failed to carry its burden of proof with respect to the remaining two elements of a voidable preference: that Maza was insolvent on the dates of the transfers and that the Bank had reasonable cause to believe it was insolvent on those dates.
 

 Both the question of Maza’s insolvency and that of the Bank’s reasonable cause to believe it was insolvent are issues of fact.
 
 Kaufman v. Tredway,
 
 195 U.S. 271, 273, 25 S.Ct. 33, 34, 49 L.Ed. 190 (1904);
 
 Salter v. Guaranty Trust Co. of Waltham,
 
 237 F.2d 446, 447 (1st Cir. 1956).
 
 [2]
 
 Thus, we will not disturb the decision below unless we are satisfied that the district court’s findings on these questions were “clearly erroneous”. Fed.R.Civ.P. 52(a). The presumption of correctness reflected in the “clearly erroneous” rule applies not only when the district court’s findings are based upon its assessment of conflicting testimony, but also when, as here, much of the evidence is documentary and the challenged findings are factual inferences drawn from undisputed facts.
 
 Commissioner v. Duberstein,
 
 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960);
 
 Engine Specialties, Inc.
 
 v.
 
 Bombardier Ltd.,
 
 454 F.2d 527, 530 (1st Cir. 1972);
 
 Leach
 
 v.
 
 Crucible Center Co.,
 
 388 F.2d 176, 179 (1st Cir. 1968).
 

 
 *577
 
 A.
 
 Maza’s Insolvency
 

 A person is deemed insolvent, under the Bankruptcy Act, “whenever the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts.” 11 U.S.C. § 1(19). This application of a “balance sheet test” focuses not on the liquid funds available at the time of a transfer, but rather on the liquidation value of the debtor’s assets compared to his current liabilities. Under this approach, a negative balance sheet raises a presumption of insolvency, see
 
 In re PRS Products, Inc.,
 
 574 F.2d 414 (8th Cir. 1978), although the fact that the debtor has overdrawn his bank account or has other cash flow difficulties does not,
 
 see McDonald v. Clearwater Railway Co.,
 
 164 F. 1007 (9th Cir. 1908).
 

 The determination of the “fair valuation” of the debtor’s assets at a specific time is at best an inexact science, and may often be impossible. As a result, insolvency frequently must be determined by proof of other facts or consideration of other factors from which insolvency may be inferred.
 
 Hassan v. Middlesex County National Bank,
 
 338 F.2d 838 (1st Cir.),
 
 cert. denied,
 
 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964).
 
 [3]
 
 Reduction in the face value of assets may be appropriate if those assets are not susceptible to liquidation, and thus cannot be made available for payment of debts, within a reasonable period of time.
 
 See In re United Financial Corp.,
 
 104 F.2d 593, 598 (7th Cir. 1939). Thus, for example, accounts receivable need not be taken at face value if circumstances cast doubt on their collectibility. The prospects of collection of such assets are evaluated in light of the past record of payment of the obligors, the obligors’ current solvency, and the presence or absence of any dispute over the validity of the accounts or debts owed.
 
 See
 
 1 W. Collier on Bankruptcy ¶ 1.19 at 125-26 (14th ed. 1977). Because the value of such assets may, in certain circumstances, be discounted, it is appropriate for the trier of fact to hear qualified opinion testimony on their fairly realizable value.
 
 See Irving Trust Co. v. Jacob Weckstein & Sons,
 
 64 F.2d 333 (2d Cir. 1933);
 
 Mack v. Bank of Lansing,
 
 396 F.Supp. 935 (W.D.Mich.1975).
 

 The district court relied on several factors in concluding that Maza was insolvent during the period in question, including its inability to reduce its overdrafts without further borrowing from the Bank. In view of the applicable “balance sheet test”, however, the crucial element in the court’s finding of insolvency was its determination that the audited financial statement showing Maza’s net worth on June 30, 1975, to be $1,592,446 was an “inaccurate representation of the corporation’s financial condition.” The court observed that under the accounting method used prior to June 30, 1975,
 
 [4]
 
 and still used for tax accounting purposes, Maza showed a deficit of $233,332 for the fiscal year ending June 30, 1975. While we reject any implication in the district court’s opinion that Maza had switched from a “correct” to an “incorrect” accounting method, we find that the court’s conclusion about the accuracy (or lack thereof) with which the June 30 statement reflected Maza’s fiscal viability was supported by the subsidiary facts well beyond the minimum required under the “clearly erroneous” standard.
 

 Included in the financial statement relied on by Maza as evidencing its solvency, listed
 
 *578
 
 under “assets”, is an entry for retainages (accounts receivable) on outstanding contracts, pending completion, of $1,986,375. Mr. Manual Mayor, a former executive vice-president of Maza, testified that of the progress billings due Maza as of June 30, 1975, approximately $1,600,000 was uncol-lectible during 1975. Specifically, he stated that two payments of $300,000 and $400,000 were withheld because of defects in the construction and another, for $900,000, was uncollectible because the job could not be completed due to a deficiency in funds required to complete the project. Without these sums included as assets, the June 30, 1975, statement relied on by Maza would have shown a deficit, which supports a conclusion of insolvency. This inference is supported further by Mayor’s testimony that Maza was unable to obtain any new contracts between June of 1975 and March of 1976. By crediting this testimony, the district court had ample basis for concluding that Maza was insolvent after November 1, 1975.
 

 B.
 
 The Bank’s Reasonable Cause to Believe Maza
 
 Was
 
 Insolvent
 

 In order to establish a voidable preference under section 60(b), a debtor-in-possession must prove, in addition to its insolvency at the time of the transfers, that the creditor had reasonable cause to believe it was insolvent. As the district court noted, the debtor need not prove subjective knowledge or belief on the part of the creditor, but only, under an objective standard, that the facts relevant to the debtor’s fiscal condition known or ascertainable by the creditor would lead a prudent business person to conclude that the debtor is insolvent. 3 W. Collier on Bankruptcy,
 
 supra,
 
 ¶ 60.53 at 1057-58, 1063-66. While mere suspicion that a debtor is experiencing financial difficulties will not result in imputation of knowledge of insolvency to the creditor,
 
 see Green v. A. G. Edwards & Sons, Inc.,
 
 582 F.2d 439, 443 (8th Cir. 1978), facts that would incite a businessman of ordinary prudence to further inquiry constitute notice of all facts that a reasonably diligent inquiry would disclose,
 
 In re PRS Products, Inc.,
 
 574 F.2d 414, 417 (8th Cir. 1978);
 
 Marks v. Goodyear Rubber Sundries, Inc.,
 
 238 F.2d 533, 534-35 (2d Cir. 1956).
 

 The district court considered a number of factors in deciding whether the Bank had reasonable cause to believe Maza was insolvent: (1) its knowledge of Maza’s overdrafts, (2) its knowledge of Maza’s increasing cash flow difficulties, (3) its inability to obtain a current financial statement from Maza, and (4) the extent of the Bank’s involvement in and familiarity with Maza’s financial affairs. Weighing the combined effect of these factors, the court concluded that Maza had proved “the existence of such facts and circumstances as would impose a duty on the Bank to inquire into the financial condition of [Maza].” Further, the court said, the knowledge possessed by or chargeable to the Bank would have revealed Maza’s insolvency.
 

 The Bank readily admits that the question of a creditor’s reasonable cause to believe is a highly fact-sensitive one.
 
 See Green v. A. G. Edwards & Sons, Inc., supra,
 
 582 F.2d at 442-43. Our task is not to make this factual determination de
 
 novo,
 
 but rather to determine whether there is sufficient basis in fact for the district court’s findings. Mr. Mayor, Maza’s former vice-president, testified that during the latter half of 1975 he had told the Bank’s officer, Mr. Feria, about Maza’s inability to secure any new construction contracts and its difficulty in obtaining payment on specific outstanding accounts receivable totall-ing some $1,500,000. A former vice-president of the Bank, Mr. Alejo Torres, also testified that at a meeting with Mr. Maza he was told that Maza’s customers were not making payments on outstanding accounts receivable. Moreover, as the district court noted, the behavior of the Bank itself during the crucial period suggests that it was aware of Maza’s impending demise. The Bank began to request additional security for its loans to Maza, it obtained assignments of Maza’s progress payments, it declined Maza’s requests for additional credit
 
 *579
 
 except to the extent applied to reduce Maza’s existing indebtedness, and it began returning Maza’s overdraft checks for insufficient funds. On the basis of the foregoing, we cannot say that the district court’s finding that the Bank had reasonable cause to believe Maza was insolvent at the time of the transfers was clearly erroneous.
 

 The Bank’s Set-Off Claim
 

 The Bank argues further that even if Maza’s pledge of its certificate of deposit for $2,222,939.49 on December 26,1975, constituted an otherwise voidable preference under section 60, Maza is not entitled to recover this sum since it was subject to the Bank’s right to set off mutual debts recognized by section 68 of the Bankruptcy Act. Section 68, 11 U.S.C. § 108, provides:
 

 “§ 68. Set-offs and Counterclaims.
 

 a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
 

 b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which . . . was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.”
 

 When an insolvent debtor makes general deposits (deposits not set aside for a particular purpose or for the benefit of a third party), even within four months of his filing a petition for bankruptcy, the bank may set off such deposits against any debts of the depositor to the bank.
 
 See
 
 4 W. Collier on Bankruptcy,
 
 supra,
 
 ¶ 68.16 at 917-20. A bank’s right to set-off is limited to deposits made in good faith, in the ordinary course of business, and subject to withdrawal at the will of the depositor, In re
 
 PRS Products, Inc., supra,
 
 574 F.2d at 418;
 
 Miller v. Wells Fargo Bank International Corp.,
 
 540 F.2d 548, 557 (2d Cir. 1976), and is not available when a deposit is accepted by a bank to be applied to a preexisting debt of the depositor,
 
 Miller, supra,
 
 540 F.2d at 557.
 

 The Bank argues that the $2,222,-939.49 certificate of deposit dated December 26, 1975, was merely a consolidation of six certificates of deposit, all of which had originated on or before November 18, 1974. These certificates, the Bank claims, represented general deposits made in the ordinary course of business. Were consolidation into a single certificate all that transpired on December 26, 1975, we would be disposed to recognize the Bank’s claim. A certificate of deposit is a “general deposit”, and the requirement that deposits be subject to withdrawal at the will of the depositor is intended to distinguish special purpose or restricted (e. g., trust or payroll) accounts, not to except time deposits from the right to set-off.
 
 See In re Applied Logic Corp.,
 
 576 F.2d 952 (2d Cir. 1978).
 

 The consolidated certificate created on December 26, however, was pledged to the Bank as security for a promissory note given to the Bank to reduce Maza’s overdraft indebtedness. As the district court found, the funds represented by this certificate could no longer be withdrawn by Maza; they had ceased to be general deposits for purposes of the Bank’s right to set-off. Although Maza may not initially have intended its deposits to apply to offset its existing indebtedness to the Bank, the December 26 transaction in effect amounted to a repurchase of a certificate of deposit, limited by the pledge of that certificate to the Bank, having the effect of enabling the Bank to secure a preferential position over other creditors of Maza.
 

 Affirmed.
 

 [1]
 

 . Under section 342 of the Act, a chapter XI debtor-in-possession has all of the titles and powers of a trustee appointed under the Act. 11 U.S.C. § 742.
 

 [2]
 

 . The Second and Fifth Circuits have characterized the question of the creditor’s reason to believe as a mixed question of law and fact and have accordingly applied a broader standard of review.
 
 See In re Hygrade Envelope Corp.,
 
 366 F.2d 584, 587 (2d Cir. 1966);
 
 Mayo v. Pioneer Bank & Trust Co.,
 
 297 F.2d 392 (5th Cir. 1962).
 
 But see Snider
 
 v.
 
 England,
 
 374 F.2d 717, 719-20 (9th Cir. 1967);
 
 In re Ollag Const. Equip. Corp.,
 
 446 F.Supp. 586, 594 (W.D.N.Y.),
 
 rev’d on other grounds,
 
 578 F.2d 904 (2d Cir. 1978). In
 
 Hy-grade Envelope Corp.,
 
 Judge Friendly stated that “when the issue is [the district judge’s] application of a legal standard to facts undisputed or reasonably found, reversal is not limited to results that are ‘clearly erroneous’; it is enough that the appellate court should be convinced . . that the result does not jibe with the applicable rule of law.” 366 F.2d at 588 (footnote omitted). While these cases may be representative of an increasingly widespread approach to such “mixed” questions of law and fact, see 9 C. Wright & A. Miller, Federal Practice & Procedure § 2589 (1971), we feel bound to follow the Supreme Court’s unequivocal, and as yet unreversed, holding in
 
 Kaufman v. Tredway,
 
 195 U.S. 271, 25 S.Ct. 33, 49 L.Ed. 190 (1904).
 

 [3]
 

 . In response to the problems engendered by requiring proof of insolvency,
 
 see
 
 H.R.Rep.No. 95-595, 95th Cong., 1st Sess. 178 (1977), Congress included in the Bankruptcy Reform Act of 1978, Pub.L.No.95-598, § 547(f), 92 Stat. 2549, a new preference provision under which insolvency is presumed for the period 90 days prior to filing.
 

 [4]
 

 . Prior to the preparation of its June 30, 1975, financial statement, Maza had employed the “completed contract” method of accounting. Under this method, no income is recognized until the contract is completed, and billing in excess of cost is recorded as a liability. Under the method adopted for Maza’s 1975 accounting, “percentage of completion”, projections or estimates of profits from projects not yet completed are included as assets. The effect of the latter method is to increase the balance sheet net worth of the company.