In re Dudley D. ALLEN, Debtor.

No. 96–0565–BKC–3P7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 31, 2000.

Raymond R. Magley, Smith Hulsey & Busey, Jacksonville, Florida, for George Washington Life Insurance Company.

Richard L. Thames, Stutsman & Thames, Jacksonville, Florida, for Dudley D. Allen.

Valerie Hall Manuel, Hall & Hall, P.A., Jacksonville, Florida.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON GEORGE WASHINGTON LIFE INSURANCE COMPANY'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION FOR THE P.A. STOCK

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Opinion and Order of the United States District Court for the Middle District of Florida, Jacksonville Division, entered on February 29, 2000. The District Court remanded with instructions to determine the value of Debtor's stock in his law firm. The Court provided the parties with the opportunity to present supplemental evidence at an evidentiary hearing held on

July 20, 2000. Upon the evidence presented and submissions by the parties, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On February 1, 1996 ("Petition Date"), Dudley D. Allen ("Debtor") filed for relief under Chapter 7 of the Bankruptcy Code. ( Doc. 1.) Debtor's bankruptcy schedules (Doc. 2) listed various items as exempt under Article X, § 4 of the Florida Constitution, including $794 in cash and personal property and one hundred shares of Debtor's law firm, Dudley D. Allen, P.A.

2. On March 21, 1996, George Washington Life Insurance Company ("G.W.") filed an objection to several of Debtor's claims of exemption, including the firm's shares of stock ("P.A.Stock"). (Doc. 18.)

3. On July 18 and 19, 1996, the Court held hearings on G.W.'s objections. At trial, G.W. argued that the P.A. Stock was not exempt property because its value exceeded the remaining $206 exemption permitted under § 4. G.W. demonstrated that the firm had receivables that were considerably greater than $206.[1] Moreover, the record illustrated that Debtor pledged the P.A. Stock to his wife ("Creditor") shortly before the Petition Date as collateral for two lease agreements. (G.W.Ex. 4 at 104–05.) According to these leases, $300.67 was still due under the agreements as of the Petition Date. G.W. asserted that such a pledge would not have been made if the P.A. Stock were worthless. (G.W.Br. at 47.)

4. Debtor, however, argued that the evidence presented by G.W. was insufficient to prove the value of the P.A. Stock since G.W. did not address the accounts payable or other long-term obligations of the corporation. (Debtor Mem. at 35.)

5. Debtor testified that the P.A. Stock was worth nothing since the firm owned no assets and had limited income due to Debtor's involvement in pending litigation. Moreover, he testified that the firm's receivables were quickly depleted by its concurrent liabilities. (Tr. at 199–203.)

6. On December 18, 1996, the Court held that G.W. failed to carry the burden of proof required to sustain the objection regarding the P.A. Stock because it did not present evidence other than the firm's profits and receivables. The Court accepted Debtor's value of the P.A. Stock as $206 and allowed the exemption. (Doc. 40 at 17.)

7. G.W. filed a Notice of Appeal from the Judgment and the case came before the Honorable Harvey E. Schlesinger, United States District Judge, Middle District of Florida, Jacksonville Division (Case No. 3:97–cv–87–J–20). (Doc. 42.)

8. On February 29, 2000, Judge Schlesinger held the Bankruptcy Court's findings concerning the value of the P.A. Stock to be clearly erroneous since G.W. *did* present additional evidence of value—namely, that Debtor pledged the P.A. Stock as collateral for a loan. Since this Court did not weigh the probative impact of this evidence, the District Court remanded the issue for further findings of fact. (Doc. 89 at 2–3.)

9. On July 20, 2000, the Court conducted an evidentiary hearing. The sole issue before the Court was the valuation of the P.A. Stock.

10. At the hearing, Debtor testified as to the value of the items that were secured by the P.A. Stock. This included law books, office equipment, and furnishings worth approximately $7,600. Debtor also insisted that when he initially pledged the P.A. Stock, he did not believe it had any value. Finally, Debtor stated that although the original lease has expired, he

---

1. G.W. highlighted that the corporation had nearly $7,297.43 in receivables on December 31, 1995 and $6,316.41 in receivables on May 2, 1996. (G.W.Ex. 4 at 115–116; G.W.Ex. 19 at 3–4.)

has renewed the leases and continues to use the P.A. Stock as collateral.

### CONCLUSIONS OF LAW

The commencement of a bankruptcy case creates an estate that is comprised of all the property in which a debtor has a legal or equitable interest as of the petition date. *See* 11 U.S.C. § 541(a). However, an individual debtor may exempt property from the estate by claiming exemptions authorized by § 522. 11 U.S.C. § 522(b)(2)(A).

A state may opt out of the federal exemptions available under § 522(d) and limit its residents to the exemptions provided under state law. § 522(b); *See In re Podzamsky*, 122 B.R. 596, 598 (Bankr.M.D.Fla. 1990). The state of Florida has exercised this option. *See Podzamsky*, 122 B.R. at 598; Fla.Stat. ch. 222.20 (1999). Accordingly, the interplay of § 522(b) and ch. 222.20 permits a debtor who is a Florida resident to claim exemptions under the Florida Constitution. Fla. Const., art. X, § 4.

A debtor is required to list the property claimed as exempt on his or her schedule of assets. Fed.R.Bankr.P. 4003(a). § 4 entitles a debtor to claim an exemption of up to $1,000 in personal property and retain such property free from the reach of creditors. Fla. Const., art. X, § 4(a)(2). In this case, Debtor listed the P.A. Stock on his schedules and claimed them as exempt under § 4.

Once the exemptions have been claimed, interested parties can file objections within thirty days from the conclusion of the meeting of creditors or the filing of any amendment to the schedules. Fed. R.Bankr.P. 4003(b). G.W. filed a timely objection asserting that Debtor's claim of exemption for the P.A. Stock was improper because its value was greater than the remaining exemption amount of $206, thereby exceeding the $1000 allowance set forth under the Florida Constitution.

A claim of exemption is considered prima facie evidence of its validity. Fed.R.Bankr.P. 4003 ed.'s cmt. (c) (West 2000). Thus, the objecting party bears the burden of proving that the exemptions are improperly claimed. Fed.R.Bankr.P. 4003(c). Once the opposing party has established an appropriate objection, the burden shifts to the debtor to prove the validity of the claim. Fed.R.Bankr.P. 4003 ed.'s cmt. (c) (West 2000). The issue presented on remand is whether this Court properly overruled G.W.'s objection and allowed Debtor's claim of exemption.

Since there is no readily available market from which to glean the value of the P.A. Stock, the Court must determine its worth through the valuations offered by the parties. In Debtor's Post–Trial Memorandum, he argues that G.W.'s "evidentiary presentation ... shows only half the picture": while it noted the firm's profits and receivables, it did not address the "corresponding liabilities of the corporation." (Debtor's Post–Trial Mem. at 7.) At the evidentiary hearing, Debtor testified that the firm's expenses offset its income. Additionally, these liabilities did not include the salary that was owed to him. Using Debtor's "balance sheet" valuation, it appears that the P.A. Stock is indeed worthless.

However, the District Court noted that "the mere examination of assets is insufficient to prove value." (Doc. 89 at 2.) In so holding, it cited a First Circuit opinion:

> The determination of the "fair valuation" of the debtor's assets at a specific time is at best an inexact science, and may often be impossible. As a result, insolvency frequently must be determined by proof of other facts or consideration of other factors from which insolvency may be inferred. *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 577 (1st Cir.1980) (citations omitted).

This Court agrees with the District's Court's conclusion that the mere presence of assets and liabilities does not necessari-

ly reflect the fair value of an entity. This is especially true when there are other factors that might suggest a differing value. The Court does not believe that the "balance sheet" valuation relied upon by Debtor is a precise indication of the worth of the P.A. Stock on the Petition Date. The parties have presented evidence of income and expenses both *before* and *after* the Petition Date, yet neither party has given an accurate assessment of the firm's assets and liabilities *as of the Petition Date,* the only date which is relevant to the Court's analysis. Thus, the Court declines consideration of those figures in this instance.

Noting that the "balance sheet" valuation is of little use, the Court must ascertain a more accurate formula. G.W. urges the Court to find that the P.A. Stock has value since it was pledged as collateral to secure two lease agreements: Debtor "would not have pledged the stock to his wife as security if it had no value." (G.W.'s Post–Hr'g Br. at 47.)

▉ The Court finds G.W.'s position persuasive. Debtor's claim that the P.A. Stock is of no value would lead to the absurd conclusion that an item may be secured with worthless collateral. This would render the very purpose of collateral useless! Black's Dictionary defines "collateral" as "[p]roperty that is pledged as security against a debt." Black's Law Dictionary 255 (7th ed.1999). Collateral is offered to guarantee repayment of a debt or obligation. Consequently, the collateral *must* be valuable enough to either encourage the debtor to fulfill his promise or to provide the creditor with some relief if the debtor fails to satisfy his debt.

In this case, the collateral must have been valuable to both Creditor and Debtor. It is likely that Creditor believed that the

P.A. Stock had value since she accepted it as security. Furthermore, Debtor must have had some incentive to consistently satisfy his lease obligations. Finally, if the P.A. Stock were indeed worthless, as Debtor claims, it is unlikely that the lease would have been renewed while secured by the P.A. Stock. Surely a creditor would not enter into an agreement where she knew the collateral to be worthless.

At the evidentiary hearing, Debtor was given the opportunity to explain why he pledged the P.A. Stock as collateral if it was worthless. Debtor did not respond to this inquiry. His failure to address this important question, *which was emphasized by the District Court,* is insufficient to overcome G.W.'s objection.

In light of the fact that there is sparse evidence in the record regarding the firm's assets and liabilities as of the Petition Date, the Court will establish the value of the P.A. Stock by determining the amount owed under the two leases on the Petition Date. The value of the P.A. Stock must be, at minimum, equivalent to the amount owed on the lease as of the Petition Date. Debtor owed a total of $816.29 under the lease of books and lease of personal property.[2] The P.A. Stock was pledged by Debtor only two months prior to his Petition Date. At that time, the amount due under the lease was $300.67. Therefore, the Court calculates the value of the P.A. Stock to be $300.67 on the Petition Date.

### CONCLUSION

G.W. has satisfied the burden of proof necessary to sustain an objection to a claim of exemption for the P.A. Stock. The Court finds that the value of the P.A. Stock exceeds the remaining $206 exemption by $94.67. Accordingly, the Court

---

**2.** The lease of books was for a two-year term beginning May 1, 1995. The monthly lease payments were $10.41 per month. Debtor filed his bankruptcy petition in February 1996. Thus, there were 15 payments remaining under the lease agreement as of the Petition Date, which amounted to $156.15. The lease of personal property was for a two-year term beginning June 1, 1994. There were 4 lease payments of $36.13 remaining as of the Petition Date that totaled $144.52. Thus, the amount owed under the lease of books and personal property as of the Petition Date was $300.67. (G.W.Ex.11.)

must deny Debtor's claim of exemption for $94.67 and will require Debtor to pay such amount to the Trustee within thirty days of the Court's Order. A separate Order will be entered in accordance with these Findings of Fact and Conclusions of Law.